IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**OMNIPOL, a.S.**,
a Private Limited Company,

AND

**ELMEX PRAHA, a.S.**,
a Private Limited Company,

      PLAINTIFFS,

**v.**

**MULTINATIONAL DEFENSE SERVICES, LCC**,
Tarpon Springs, FL
a Florida Registered Limited Liability Company,

**ANGELO SAITTA**
an individual,

**LISA SAITTA**,
an individual,

**CHRISTOPHER WORRELL**,                Case No:
an individual,

**JAMES BRECH**,                **COMPLAINT**
an individual,

**ROBERT PARA**,
an individual,

**BRYAN SIEDEL**,                **JURY TRIAL DEMANDED**
an individual,

**AMY STROTHER**,
an individual, AND

**KIRK BRISTOL**,
an individual.

      DEFENDANTS.

_____/

## COMPLAINT

Plaintiffs, Omnipol, a.S., and ELMEX Praha, a.S., hereby file this Complaint against Defendants Multinational Defense Services, LLC ("Multinational"), Angelo Saitta, Lisa Saitta, Christopher Worrell, James Brech, Robert Para, Bryan Siedel, Amy Strother, and Kirk Bristol for fraud, unjust enrichment, and State and Federal Racketeer Influenced and Corrupt Organization (RICO) violations. In support thereof, Plaintiffs state:

## INTRODUCTION

Defendants collectively planned and executed a fraudulent scheme that targeted and fleeced the U.S. Special Operations Command ("SOCOM") over several years. Defendants Worrell, Para, and Brech formed Purple Shovel, LLC ("Purple Shovel") and acquired what is known as an ITAR license, which is a license used to engage in international arms transactions. Defendants Bristol, Siedel, and Strother, as civilian contracting officers at SOCOM, illicitly issued prime contracts to Worrell, Para, and Brech through Purple Shovel (the vehicle used by Defendants for fraudulent purposes) to purchase and deliver arms, ammunition, and related supplies to SOCOM. Defendants Worrell, Para, and Brech then procured and supplied to SOCOM defective weapons and ammunition that had little to no value. Yet under the watchful eyes of Siedel, Strother, and Bristol, these arms and munitions passed SOCOM inspection. SOCOM massively overpaid for the defective goods, and once the SOCOM contracts were paid out to Worrell, Para, and Brech through Purple Shovel, the Defendants all split the illegally obtained profits amongst themselves.

When the scheme resulted in the tragic serious injury one U.S. Soldier and actual death of another, red flags were raised. As a result, the U.S. Government blacklisted Purple Shovel's ITAR license, a result that prohibited these Defendants from continuing their fraudulent scheme of

delivering defective, near valueless arms and ammunitions in exchange for millions of dollars under SOCOM contracts. Thus, Defendants recalibrated.

Defendants Worrell, Para, and Brech went out and purchased a gun shop (Tactical Speed, LLC) in Virginia, thereby acquiring a new ITAR license under Tactical Speed's name. However, Defendants Siedel, Strother, and Bristol continued awarding prime SOCOM contracts to Worrell, Para, and Brech through Purple Shovel, while knowing that the ITAR license used by Purple Shovel were actually registered to Tactical Speed. This scam allowed these Defendants to avoid the ban on Purple Shovel's black-listed ITAR license. At this juncture, Defendants turned their sights on subcontractors capable of delivering arms and munitions that met the standards of quality required by SOCOM, making subcontractors, such as Plaintiffs, their victims. Simply, Worrell, Para, and Brech promised Plaintiff that once Plaintiff delivered quality arms and ammunitions to the U.S. Government as required by the subject SOCOM contract. But once said delivery was made and the arms and ammunitions were accepted by the U.S. Government, these Defendants took all the money issued under the subject SOCOM contract, including the $2,984,250 owed to Plaintiffs, and split those millions amongst themselves.

Along with the millions stolen from Plaintiffs, Defendants bilked at least 8 other subcontractors for over five million dollars total. The Defendants' conduct constitutes illegal conspiracy to engage in fraud and racketeering.

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over the federal claims in this action in accordance with 28 U.S.C. § 1331, as the claims raise federal questions under the laws of the United States.

2.

This Court has jurisdiction over the claims in this action in accordance with 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and is between citizens of this State and subjects or citizens of a foreign state.

3.

This Court has personal jurisdiction over the Defendants as they are domiciled within this District.

4.

Venue is proper in the Middle District of Florida, Tampa Division, as the Defendants reside in this District and all, or a substantial part of all, the events giving rise to the claims in this Complaint occurred within this District.

## **PARTIES**

5.

At all times relevant to this Complaint, Defendant Christopher Worrell was an executive officer of Purple Shovel, a Florida registered Limited Liability Company with a principle place of business in Hillsborough County, Florida. At all times relevant to this Complaint, Christopher Worrell resided within Orange County, Florida. As an executive officer of Purple Shovel, Christopher Worrell participated in a scheme with the other Defendants to commit fraud and wire and mail fraud against the Plaintiffs in connection with military contracts obtained through Purple Shovel.

6.

At all times relevant to this Complaint, Defendant Robert Para was a managing member of Purple Shovel, a Florida registered Limited Liability Company with a principle place of business

in Hillsborough County, Florida. As a managing member of Purple Shovel, Robert Para participated in a scheme with the other Defendants to commit fraud and wire and mail fraud against the Plaintiffs in connection with military contracts obtained through Purple Shovel.

7.

At all times relevant to this Complaint, Defendant James Brech was an executive officer of Purple Shovel, a Florida registered Limited Liability Company with a principle place of business in Hillsborough County, Florida. As an executive officer of Purple Shovel, James Brech participated in a scheme with the other Defendants to commit fraud and wire and mail fraud against the Plaintiffs in connection with military contracts obtained through Purple Shovel.

8.

At all times relevant, Defendant Bryan Siedel was a civilian contracting officer for SOCOM charged with issuing and overseeing prime contracts for the purchase and delivery of arms, ammunition, and related goods. Defendant Siedel issued and oversaw SOCOM contracts to Purple Shovel with full knowledge that Purple Shovel was created and operated as a fraudulent vehicle/enterprise to defraud Plaintiffs and others and that Purple Shovel was, in fact, the instrument used by Defendants to defraud Plaintiffs. Seidel shared in the proceeds realized from the fraudulent scheme.

9.

At all times relevant, Defendant Amy Strother was a civilian contracting officer for SOCOM charged with issuing and overseeing prime contracts for the purchase and delivery of arms, ammunition and related goods. Defendant Strother issued and oversaw SOCOM contracts to Purple Shovel with full knowledge that Purple Shovel was created and operated as a fraudulent vehicle/enterprise to defraud Plaintiffs and others and that Purple Shovel was, in fact, the

instrument used by Defendants to defraud Plaintiffs. Strother shared in the proceeds realized from the fraudulent scheme.

10.

At all times relevant, Defendant Kirk Bristol was a civilian contracting officer for SOCOM charged with issuing and overseeing prime contracts for the purchase and delivery of arms, ammunition, and related goods. Defendant Siedel issued and oversaw SOCOM contracts to Purple Shovel with full knowledge that Purple Shovel was created and operated as a fraudulent vehicle/enterprise to defraud Plaintiffs and others and that Purple Shovel was, in fact, the instrument used by Defendants to defraud Plaintiffs. Seidel shared in the proceeds realized from the fraudulent scheme.

11.

At all times relevant to this Complaint, Defendant Angelo Saitta was the managing member of Multinational Defense Services, LLC, a Florida registered Limited Liability Company with a principle place of business in Pinellas County, Florida. As the managing member of Multinational Defense Services, Angelo Saitta participated in a scheme with the other Defendants to commit fraud and wire and mail fraud against the Plaintiffs in connection with military contracts obtained through Purple Shovel.

12.

At all times relevant to this Complaint, Defendant Lisa Saitta was the secretary of Multinational Defense Services, LLC, a Florida registered Limited Liability Company with a principle place of business in Pinellas County, Florida. As the secretary of Multinational Defense Services, Lisa Saitta participated in a scheme with the other Defendants to commit fraud and wire

and mail fraud against the Plaintiffs in connection with military contracts obtained through Purple Shovel.

13.

At all times relevant to this Complaint, Defendant Multinational Defense Services, LLC, was a Florida registered Limited Liability Company with a principle place of business in Pasco and Pinellas County, Florida. Multinational Defense Services participated in a scheme with the other Defendants to commit fraud and wire and mail fraud against the Plaintiffs in connection with military contracts obtained through Purple Shovel by and through the actions of its members.

14.

Plaintiff Omnipol, a.S., at all times relevant to this Complaint, was a private limited company registered in the Czech Republic, with a principle place of business in Prague. Omnipol was the victim of the Defendants' scheme to commit fraud and mail and wire fraud in connection with a subcontract under a military contract obtained by Purple Shovel, LLC.

15.

Plaintiff ELMEX Praha, a.S., at all times relevant to this Complaint, was a private limited company registered in the Czech Republic, with a principle place of business in Prague. ELMEX Praha, a.S. was the victim of the Defendants' scheme to commit fraud and mail and wire fraud in connection with a subcontract under a military contract obtained by Purple Shovel, LLC.

**STATEMENT OF FACTS**

**A. The Association Part 1: Defendants Bryan Siedel, Amy Strother, and Kirk Bristol as civilian contracting officers**

16.

At all times relevant, Defendant Bryan Siedel was a civilian contractor with the U.S. Special Operations Command ("SOCOM").

17.

At all times relevant, Defendant Amy Strother was a civilian contractor with the U.S. Special Operations Command ("SOCOM").

18.

At all times relevant, Defendant Kirk Bristol was a civilian contractor with the U.S. Special Operations Command ("SOCOM").

19.

At all times relevant, Defendant Bryan Siedel had the authority to approve SOCOM contracts with prime contractors for the purpose of securing arms and ammunition for use by the U.S. Government.

20.

At all times relevant, Defendant Amy Strother had the authority to approve SOCOM contracts with prime contractors for the purpose of securing arms and ammunition for use by the U.S. Government.

21.

At all times relevant, Defendant Kirk Bristol had the authority to approve SOCOM contracts with prime contractors for the purpose of securing arms and munitions for use by the U.S. Government.

22.

At all times relevant, Defendant Bryan Siedel had the obligation to ensure that arms and ammunition delivered under a SOCOM contract he approved met all applicable requirements, prior to approving payments to a subcontractor under said SOCOM contract.

23.

At all times relevant, Defendant Amy Strother had the obligation to ensure that arms and ammunition delivered under a SOCOM contract she approved met all applicable requirements, prior to approving payments to a subcontractor under said SOCOM contract.

24.

At all times relevant, Defendant Kirk Bristol had the obligation to ensure that arms and ammunition delivered under a SOCOM contract he approved met all applicable requirements, prior to approving payments to a subcontractor under said SOCOM contract.

**B.  The Association Part 2: Christopher Worrell, Benjamin Worrell, Robert Para, and James Brech form Purple Shovel, the vehicle company used to defraud victims of Defendants' scheme**

25.

Benjamin Worrell is the Managing Member of Purple Shovel, LLC, a Florida registered LLC. In addition, Benjamin Worrell was the principal of Purple Shovel, LLC, incorporated in Delaware and registered as a foreign corporation with the State of Virginia. That Virginia registration has been cancelled.

26.

Prior to the formation of Purple Shovel, Benjamin Worrell and Defendant Bryan Siedel knew each other and associated with each other in public and private.

27.

Prior to the formation of Purple Shovel, Defendant Christopher Worrell and Defendant Bryan Siedel knew each other and associated with each other in public and private.

28.

Prior to the formation of Purple Shovel, Benjamin Worrell and Defendant Amy Strother knew each other and associated with each other in public and private.

29.

Prior to the formation of Purple Shovel, Christopher Worrell and Defendant Amy Strother knew each other and associated with each other in public and private.

30.

Prior to the formation of Purple Shovel, Benjamin Worrell and Defendant Kirk Bristol knew each other and associated with each other in public and private.

31.

Prior to the formation of Purple Shovel, Christopher Worrell and Defendant Kirk Bristol knew each other and associated with each other in public and private.

**C. The Scheme: The Association works together in furtherance of their fraudulent scheme**

32.

As a civilian contractor, Defendant Bryan Siedel authorized SOCOM contracts with Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech, through Purple Shovel, for the purchase and delivery of arms, ammunition, and related goods to SOCOM under a Basic Ordering Agreement, or BOA.

33.

As a civilian contractor, Defendant Amy Strother authorized SOCOM contracts with Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech, through Purple Shovel, for the purchase and delivery of arms, ammunition, and related goods to SOCOM under a Basic Ordering Agreement, or BOA.

34.

As a civilian contractor, Defendant Kirk Bristol authorized SOCOM contracts with Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech, through Purple Shovel, for the purchase and delivery of arms, ammunition, and related goods to SOCOM under a Basic Ordering Agreement, or BOA.

35.

After Siedel, Strother, and Bristol authorized the SOCOM contracts, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech then knowingly procured severely defective and near valueless arms, ammunition and related supplies as inexpensively as possible in the European secondary arms market.

36.

In certain cases, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech re-painted the arms, ammunition, and related supplies to mask its archaic age before delivering the arms, ammunition, and related supplies to the U.S. Government under SOCOM contracts.

37.

Once the non-standard, old, and defective arms and ammunition were delivered to SOCOM, Defendant Bryan Siedel ensured that the arms and ammunition passed all inspections, despite being informed by Benjamin Worrell that the arms and ammunition had been re-painted and were severely defective.

38.

Once the non-standard, old, and defective arms and ammunition were delivered to SOCOM, Defendant Amy Strother ensured that the arms and ammunition passed all inspections, despite being informed by Benjamin Worrell that the arms and ammunition had been re-painted and were severely defective.

39.

Once the non-standard, old, and defective arms and ammunition were delivered to SOCOM, Defendant Kirk Bristol ensured that the arms and ammunition passed all inspections, despite being informed by Benjamin Worrell that the arms and ammunition had been re-painted and were severely defective.

40.

Once SOCOM accepted the defective and valueless arms and ammunition, Defendant Bryan Siedel authorized payment to Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech, through Purple Shovel, under the relevant SOCOM contract. When Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech received the payment, they paid Defendant Bryan Siedel kickback money for ensuring that known defective weapons and ammunition passed inspection.

41.

Once SOCOM officially accepted the defective and valueless arms and ammunition, Defendant Amy Strother authorized payment to Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech, through Purple Shovel, under the relevant SOCOM contract. When Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech received the payment,

they paid Defendant Amy Strother kickback money for ensuring that known defective weapons and ammunition passed inspection.

42.

Once SOCOM officially accepted the defective and valueless arms and ammunition, Defendant Kirk Bristol authorized payment to Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech, through Purple Shovel, under the relevant SOCOM contract. When Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech received the payment, they paid Defendant Kirk Bristol kickback money for ensuring that known defective weapons and ammunition passed inspection.

**D. Scheme Gone South: Purple Shovel Loses its ITAR License and is Blacklisted by the U.S. Government**

43.

The defective weapons and ammunition were field tested by special operatives of the U.S. Military. While being tested, defective munitions supplied by Benjamin Worrell, Christopher Worrell, Robert Para, and James Brech exploded in the hands of two retired U.S. soldiers, killing one and severely injuring another.

44.

After the death and severe injury of the U.S. soldiers, an investigation ensued and it was found that despite the government paying millions, the weapons and ammunition delivered by Benjamin Worrell, Christopher Worrell, Robert Para, and James Brech and authorized and approved by Defendants Bryan Siedel, Amy Strother, and Kirk Bristol, were painted, defective, and near valueless.

45.

Understandably, U.S. Government officials were outraged and prohibited Benjamin Worrell, Christopher Worrell, Robert Para, and James Brech, and Purple Shovel from entering into government contracts for the purchase and delivery arms, ammunition, and related goods.

46.

The prohibition that the U.S. Government placed on Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech, and their vehicle company Purple Shovel, included blacklisting Purple Shovel's ITAR license, which is the only legal manner for Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech, through Purple Shover, to enter into SOCOM contracts for the delivery of arms and ammunition to the U.S. Government.

47.

Without an ITAR license, Benjamin Worrell and Christopher Worrell, Robert Para, James Brech, and the vehicle company Purple Shovel, could not lawfully enter into any of the subject SOCOM contracts.

48.

At all times relevant, Defendant Bryan Siedel had the obligation to ensure that he did not approve a SOCOM contract with a subcontractor that had been blacklisted by the U.S. Government. This obligation included making sure that blacklisted people and companies, whose previous ITAR licenses had been blacklisted, were not using different ITAR licenses to circumvent U.S. Government prohibitions.

49.

At all times relevant, Defendant Amy Strother had the obligation to ensure that she did not approve a SOCOM contract with a subcontractor that had been blacklisted by the U.S. Government. This obligation included making sure that blacklisted people and companies, whose previous ITAR licenses had been blacklisted, were not using different ITAR licenses to circumvent U.S. Government prohibitions.

50.

At all times relevant, Defendant Kirk Bristol had the obligation to ensure that she did not approve a SOCOM contract with a subcontractor that had been blacklisted by the U.S. Government. This obligation included making sure that blacklisted people and companies, whose previous ITAR licenses had been blacklisted, were not using different ITAR licenses to circumvent U.S. Government prohibitions.

51.

Every SOCOM contract relevant to this lawsuit required a person/company with a valid ITAR license in order to be issued.

52.

SOCOM contracts list the person/company's ITAR license to ensure that the U.S. Government's purchase of weapons is from a person/company with a lawful, valid ITAR license.

**E. The Association revamps fraudulent scheme after being blacklisted by the U.S. Government**

53.

All Defendants knew that Purple Shovel being blacklisted by the U.S. Government from SOCOM contracts meant that Purple Shovel could no longer use its blacklisted ITAR license

54.

In order to recalibrate, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech acquired a different ITAR license by purchasing a Virginia gun shop, Tactical Speed, LLC, which had its own ITAR license.

55.

Defendant Bryan Siedel authorized SOCOM contracts directly to Purple Shovel under Tactical Speed's ITAR license, while knowing that Purple Shovel's previous ITAR licenses had been backlisted because arms and ammunitions delivered under that ITAR licenses were defective and near-valueless, causing the serious injury and death of U.S. Soldiers. Siedel knew this in part because Benjamin Worrell and Christopher Worrell, Robert Para, James Brech discussed this with Bristol prior to using Tactical Speed's ITAR licenses.

56.

Defendant Amy Strother authorized SOCOM contracts directly to Purple Shovel under Tactical Speed's ITAR license, while knowing that Purple Shovel's previous ITAR licenses had been backlisted because arms and ammunitions delivered under that ITAR licenses were defective and near-valueless, causing the serious injury and death of U.S. Soldiers. Strother knew this in part because Benjamin Worrell and Christopher Worrell, Robert Para, James Brech discussed this with Bristol prior to using Tactical Speed's ITAR licenses.

57.

Defendant Kirk Bristol authorized SOCOM contracts directly to Purple Shovel under Tactical Speed's ITAR license, while knowing that Purple Shovel's previous ITAR licenses had been backlisted because arms and ammunitions delivered under that ITAR licenses were defective and near-valueless, causing the serious injury and death of U.S. Soldiers. Bristol knew this in part

because Benjamin Worrell and Christopher Worrell, Robert Para, James Brech discussed this with

Bristol prior to using Tactical Speed's ITAR licenses.

### F.  Purple Shovel targets new victims, subcontractors, for defrauding

58.

With the full knowledge of the contracting officers (Defendants Bryan Siedel, Amy

Strother, and Kirk Bristol), Benjamin Worrell and Christopher Worrell, Robert Para, and James

Brech began targeting subcontractors in order to dupe subcontractors into fronting the money for

the purchase and delivery of *quality* arms, ammunition, and related goods as specified by the

subject SOCOM contracts.

59.

At all times relevant, Defendant Bryan Siedel knew that Benjamin Worrell and Christopher

Worrell, Robert Para, and James Brech were using Purple Shovel to execute an unlawful scheme

of defrauding subcontractors, as evidenced by the fact that even after Purple Shovel and its ITAR

were blacklisted by the U.S. Government from entering into SOCOM contracts, and after

Defendant Bryan Siedel verified that Purple Shovel's ITAR was blacklisted by the U.S.

Government, Defendant Bryan Siedel still approved SOCOM contracts to Purple Shovel.

60.

At all times relevant, Defendant Amy Strother knew that Benjamin Worrell and

Christopher Worrell, Robert Para, and James Brech were using Purple Shovel to execute an

unlawful scheme of defrauding subcontractors, as evidenced by the fact that even after Purple

Shovel and its ITAR were blacklisted by the U.S. Government from entering into SOCOM

contracts, and after Defendant Amy Strother verified that Purple Shovel's ITAR was blacklisted

by the U.S. Government, Defendant Amy Strother still approved SOCOM contracts to Purple Shovel.

61.

At all times relevant, Defendant Kirk Bristol knew that Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech were using Purple Shovel to execute an unlawful scheme of defrauding subcontractors, as evidenced by the fact that even after Purple Shovel and its ITAR were blacklisted by the U.S. Government from entering into SOCOM contracts, and after Defendant Kirk Bristol verified that Purple Shovel's ITAR was blacklisted by the U.S. Government, Defendant Kirk Bristol still approved SOCOM contracts to Purple Shovel.

### G.  The Association uses their new scheme to specifically target Plaintiffs

62.

On June 7, 2016, Defendant Bryan Siedel, acting as a civilian contracting officer for SOCOM, issued a SOCOM contract with Purple Shovel—under the new ITAR licenses acquired after its old ITAR licenses were blacklisted—for the purchase of arms, ammunition, and related supplies, including 7,500 AK-47 Assault Rifles. This contract, H92222-16-G-0006, was in the amount of $2,984,250 (hereinafter the "SOCOM Contract").

63.

On June 7, 2016, Defendant Amy Strother, acting as a civilian contracting officer for SOCOM, issued a SOCOM contract with Purple Shovel—under the new ITAR licenses acquired after its old ITAR licenses were blacklisted—for the purchase of arms, ammunition, and related supplies, including 7,500 AK-47 Assault Rifles. This contract, H92222-16-G-0006, was in the amount of $2,984,250 (hereinafter the "SOCOM Contract").

64.

On June 7, 2016, Defendant Kirk Bristol, acting as a civilian contracting officer for SOCOM, issued a SOCOM contract with Purple Shovel—under the new ITAR licenses acquired after its old ITAR licenses were blacklisted—for the purchase of arms, ammunition, and related supplies, including 7,500 AK-47 Assault Rifles. This contract, H92222-16-G-0006, was in the amount of $2,984,250 (hereinafter the "SOCOM Contract").

65.

On May 3, 2017, Benjamin Worrell, as CEO of Purple Shovel, notified ELMEX Praha, a.S. (hereinafter "ELMEX") by email that they were hired as the subcontractor to provide the AK-47 Assault Rifles that SOCOM was to purchase under contract H92222-16-G-00063.

66.

ELMEX then selected Omnipol, a.S. (hereinafter "Omnipol") as its supplier under the subcontract.

67.

Thereafter, Benjamin Worrell sent ELMEX and Omnipol a Cooperation Agreement (hereinafter the "Contract"). These parties entered into said Agreement on June 26, 2017, memorializing their agreement under the awarded subcontract.

68.

The materiel ordered under the Contract was delivered and accepted by SOCOM on July 20, 2017.

69.

ELMEX invoiced Purple Shovel on July 27, 2017, as per the Contract, for the total amount due, $2,984,250.

**H. The Association presents fraudulent representations to Plaintiffs**

70.

Benjamin Worrell, as the CEO of Purple Shovel, agreed by mail, email, and telephone, to pay Plaintiffs the $2,984,250 provided to Purple Shovel from SOCOM upon the completion of the Contract.

71.

Benjamin Worrell also provided, again by mail and email, an End Use Certificate from SOCOM, verifying that this subcontract was pursuant to a SOCOM contract and that payment would be made by SOCOM.

72.

The Contract, which was signed by Benjamin Worrell and provided to Plaintiffs by email and regular mail, additionally provides that Purple Shovel would pay the final payment to ELMEX, by wire transfer, within 10 days of Purple Shovel receiving payment from SOCOM.

73.

At the time these representations were made, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech knew that Plaintiffs would be required to expend millions of their own money to procure and deliver the AK-47s to SOCOM, pursuant to the Contract. Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech knew this because these facts were discussed and negotiated prior to entering the subcontract.

I. **The Association Part 3: Defendants Multinational, Angelo Saitta, and Lisa Saitta work with Defendants to steal the money SOCOM paid to Purple Shovel for Plaintiffs services**

74.

SOCOM paid Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech through Purple Shovel by using SOCOM's electronic payment system, in accordance with the Contract.

75.

Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech transferred nearly all the funds from the payment of the SOCOM Contract to Multinational Defense Services, LLC (hereinafter "Multinational"). Defendants Angelo Saitta and Lisa Saitta deposited the funds into accounts for the personal use of all Defendants.

76.

Upon information and belief, this transfer was not made pursuant to any contract between Multinational and Purple Shovel.

77.

Upon information and belief, this transfer was not made for any value received by Purple Shovel.

78.

Upon information and belief, the funds Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech transferred to Multinational were then transferred out of Multinational's account by Defendants Angelo Saitta and Lisa Saitta and disbursed for the personal benefit of all Defendants.

## COUNT I
## FRAUD
**(Against all Defendants)**

79.

Plaintiffs incorporate paragraphs 1-78 as if fully restated and re-alleged herein.

80.

Based on the facts incorporated support this Count and the allegations within this Count, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech made false statements to Plaintiffs that they, through Purple Shovel, would pay the amount due on the SOCOM Contract. The payment of Plaintiffs under the Contract is a material fact in the Contract.

81.

Based on the facts incorporated to support this Count and the allegations within this Count, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech knew that they would not make said payment when the funds from SOCOM arrived. All Defendants were engaged in a scheme to defraud creditors and subcontractors of Purple Shovel, including Plaintiffs, by transferring the funds SOCOM paid to Purple Shovel to Multinational and distributing the money among the remaining Defendants.

82.

Based on the facts incorporated to support this Count and the allegations within this Count, all Defendants intended that Plaintiffs would rely on Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech's misrepresentations and enter into the Contract, based on the incorporated assurances and the promise that a wire transfer would be made within 10 days of receipt of the subject funds from SOCOM.

83.

Based on the facts incorporated to support this Count and the allegations within this Count, Plaintiffs did, in fact, rely on Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech's misrepresentations and enter into the Contract. Plaintiffs procured, manufactured, and delivered the required materiel at great cost. Plaintiffs also lost business opportunities that could have been conducted within that same time. The transfer of funds from Defendants, through Purple Shovel, to Plaintiffs never happened, evidencing fraudulent inducement. As a result, Plaintiffs have been damaged in an amount not less than $2,984,250.

84.

Due to all Defendants' conduct, based on the facts incorporated into this Count and the allegations within this Count, Plaintiffs are entitled to damages and all other relief permitted by law.

85.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250; and

(b) punitive damages in an amount to be determined at trial.

## COUNT II
## CIVIL THEFT
**(Against All Defendants)**

86.

Plaintiffs incorporate paragraphs 1-78 as if fully restated and re-alleged herein.

87.

Based on the facts incorporated to support this Count and the allegations within this Count, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech transferred the funds paid by SOCOM to Multinational, knowing said funds were due to Plaintiffs.

88.

Based on the facts incorporated to support this Count and the allegations within this Count, Defendant Multinational and all others participated by receiving and disbursing the funds to all Defendants for their personal use.

89.

Based on the facts incorporated to support this Count and the allegations within this Count, the intent of all Defendants was to deprive Plaintiffs of their right to those funds and to appropriate those funds for Defendants' own use, to which they were not entitled.

90.

Due to all Defendants' conduct, based on the facts incorporated into this Count and the allegations within this Count, Plaintiffs are entitled to damages and all other relief permitted by law.

91.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250; and

(b) punitive damages in an amount to be determined at trial.

## COUNT III
## UNJUST ENRICHMENT
**(Against All Defendants)**

92.

Plaintiffs incorporate paragraphs 1-78 as if fully restated and re-alleged herein.

93.

Based on the facts incorporated to support this Count and the allegations within this Count, Plaintiffs, pursuant to the Contract, delivered the requested materiel to SOCOM, fulfilling their role in the larger SOCOM Contract. As a result, SOCOM transferred millions of dollars to Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech, through Purple Shovel.

94.

Based on the facts incorporated to support this Count and the allegations within this Count, all Defendants understood and appreciated that SOCOM paid the funds only as a result of the completion of the Contract by Plaintiffs. Nonetheless, all Defendants benefited from the completed Contract by transferring the money from Purple Shovel to Defendants Multinational, Angelo Saitta, and Lisa Saitta, who deposited the funds into their accounts for the personal use of all Defendants.

95.

Based on the facts incorporated to support this Count and the allegations within this Count, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech knowingly damaged Plaintiffs by refusing to pay them under the Contract, instead accepting SOCOM's payment and transferring the funds to Defendants Multinational, Angelo Saitta, and Lisa Saitta, who deposited the funds into their accounts for the personal use of all Defendants.

96.

Due to the all Defendants' conduct, based on the facts incorporated into this Count and the allegations within this Count, Plaintiffs are entitled to damages and all other relief permitted by law.

97.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250; and

(b) punitive damages in an amount to be determined at trial.

## COUNT IV
## STATE RICO VIOLATIONS
### (Against All Defendants)

98.

Plaintiffs incorporate paragraphs 1-78 as if fully restated and re-alleged herein.

99.

Based on the facts incorporated to support this Count and the allegations within this Count, the pre-conceived purpose of the Defendants' scheme was to form a pattern and practice of engaging subcontractors to pay for and deliver millions of dollars' worth of weapons to the U.S. Government. Then, once the U.S. Government paid Defendants, to keep the money owed to the

subcontractors. This conduct has resulted in millions of dollars lost by Plaintiffs, not to mention other targets of this insidious scheme.

100.

Based on the facts incorporated to support this Count and the allegations within this Count, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech knowingly and intentionally used electronic and snail mail to send intentionally false representations to Plaintiffs on multiple occasions and used wire transfers to misappropriate money known to be owed to Plaintiffs.

101.

Based on the facts incorporated to support this Count and the allegations within this Count, all Defendants have and continue to target subcontractors, who front the money for arms, ammunition, and related supplies that are then delivered to the United States. In other words, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech, never spent a dime of their own; instead, in concert with other Defendants, the diverted and kept all monies earned, including Plaintiffs' owed money under the subject SOCOM Contract.

102.

Due to all Defendants' conduct, based on the facts incorporated into this Count and the allegations within this Count, the Plaintiffs are entitled to damages and all other relief permitted by law.

103.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250;

(b) a trebling of actual damages; and,

(c) an award of attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

**COUNT V**
**RICO § 1962(c)**
**(Against All Defendants)**

104.

Plaintiffs incorporate paragraphs 1-78, 98-103 as if fully restated and re-alleged herein.

105.

Based on the facts incorporated to support this Count and the allegations within this Count, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech are individuals who have associated to form Purple Shovel. Purple Shovel is a business used by Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech to engage in interstate commerce and whose activities affect interstate commerce.

106.

Based on the facts incorporated to support this Count and the allegations within this Count, all Defendants are employed by and/or associated with Purple Shovel.

107.

Based on the facts incorporated to support this Count and the allegations within this Count, all Defendants participated in the conduct of Purple Shovel's affairs through a pattern of racketeering activity, for the unlawful purpose of defrauding Plaintiffs.

108.

Based on the facts incorporated to support this Count and the allegations within this Count, pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts.

109.

In violation of 18 U.S.C. § 1341 (wire fraud), all Defendants entered a scheme with the specific intent of defrauding Plaintiffs. Communications via interstate and international wires were used to further the scheme, as well as email and telephone communications:

(a)     Plaintiffs were deceived by fraudulent misrepresentations contained in a letter that was emailed from Defendants to Plaintiff ELMEX on May 3, 2017. This letter represented that Plaintiffs were to be paid as subcontractors under SOCOM Contract H9222-16-0006;

(b)     Plaintiffs were deceived by fraudulent misrepresentations contained in the "Cooperation Agreement" dated June 26, 2017, which was emailed from Defendants to Plaintiffs on that same date and, again, represented that Plaintiffs would receive payment under SOCOM Contract H9222-16-0006;

(c)     Based on the facts incorporated to support this Count and the allegations within this Count, Plaintiffs were deceived by fraudulent misrepresentations contained in an email from Defendant Bryan Seidel dated September 1, 2017, which stated that SOCOM's payment was delayed for technical reasons. The email was intended to reassure Plaintiffs that they would eventually receive payment, and was sent with the specific intent of deceiving Plaintiffs and dissuading them from communicating with SOCOM;

(d)      Based on the facts incorporated to support this Count and the allegations within this Count, and in violation of 18 U.S.C. § 2314 (National Stolen Property Act), Benjamin Worrell

and Christopher Worrell, Robert Para, and James Brech, as Purple Shovel, received payment in the amount of $2,984,250 from SOCOM for Plaintiffs and transferred said funds in totality to Defendant Multinational. Defendants Multinational, Angelo Saitta, and Lisa Saitta, deposited the funds into the Defendants' accounts, in interstate commerce, with full knowledge that the funds were taken from Plaintiffs by fraud;

(e)     Based on the facts incorporated to support this Count and the allegations within this Count, and in violation of 18 U.S.C. § 1956, et seq., all Defendants, through Multinational, Angelo Saitta, and Lisa Saitta, engaged in an illegal money laundering transaction by taking possession of and subsequently distributing money lawfully owed to Plaintiffs under the SOCOM contract.

(f)     Based on the facts incorporated to support this Count and the allegations within this Count and related to and continuing from the fraudulent scheme perpetrated against Plaintiffs is Defendants' earlier scheme to defraud the government. Over a period of several years, Benjamin Worrell and Christopher Worrell, Robert Para, and James Brech, in concert with Bryan Siedel, Amy Strother, and Kirk Bristol, supplied SOCOM with defective arms and munitions that were worth substantially less in value than what was paid by SOCOM. Defendants' theft of money from the government violated 18 U.S.C. § 641.

110.

Based on the facts incorporated to support this Count and the allegations within this Count, the acts of wire fraud, theft, and money laundering, as set forth above, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

111.

Based on the facts incorporated to support this Count and the allegations within this Count, and in violation of 18 U.S.C. § 1962(c), all Defendants have directly and indirectly participated in conducting Purple Shovel's affairs through the patterns of racketeering activity described above.

112.

Based on the facts incorporated to support this Count and the allegations within this Count, and as a direct and proximate result of all Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property. $5.5 million in earned proceeds from the Contract was converted by Defendants.

113.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250;

(b) a trebling of actual damages; and,

(c) an award of attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

**COUNT V**
**RICO § 1962(d)**
**(Against All Defendants)**

114.

Plaintiffs incorporate paragraphs 1-79, 98-113 as if fully restated and re-alleged herein.

115.

Based on the facts incorporated to support this Count and the allegations within this Count, Defendants have all intentionally conspired and agreed to directly and indirectly participate in the conduct of Purple Shovel's affairs through a pattern of racketeering activity. Defendants all knew

their acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme described above. The conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

116.

Based on the facts incorporated to support this Count and the allegations within this Count, and as a direct and proximate result of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and the violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property in that $5.5 million in earned proceeds from the Contract to supply arms, ammunition, and related supplies to SOCOM was converted by Defendants.

117.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250;

(b) a trebling of actual damages; and,

(c) an award of attorneys' fees, pursuant to 18 U.S.C. § 1964(d)

**COUNT VI**
**ATTORNEY FEES**
**(Against All Defendants)**

118.

Based on the facts alleged in this Complaint, Plaintiffs are entitled to attorneys' fees against all Defendants under Fla. Stats. §§ 772.11, 772.104, and all applicable laws.

WHEREFORE, Plaintiffs pray to this Court:

a)   That process issue and service be had on each Defendant;

b)   That a jury trial be had on all issues so triable;

c)  That Plaintiffs recover all costs of this litigation;

d)  That Plaintiffs be awarded all other expenses in an amount to be determined at trial, including attorneys' fees;

e)  That Plaintiffs have judgment against Defendants for treble damages; and

f)  That Plaintiffs receive such other and further relief as this Court deems just and proper.

Respectfully submitted on this 3rd day of April 2019,

/s/ Dallas S. LePierre
DALLAS S. LEPIERRE
Florida Bar No. 101126
*Counsel for Plaintiff*

NEXUS DERECHOS HUMANOS ATTORNEYS, INC.
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 254-0442 Telephone
(703) 935-2453 Facsimile
dlepierre@ndh-law.com
mdobbs@ndh-law.com