IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**OMNIPOL, A.S.**,
a Private Limited Company, AND

**ELMEX PRAHA, A.S.**,
a Private Limited Company,

      PLAINTIFFS,

**v.**

**CHRISTOPHER WORRELL**,                Case No: 8:19-cv-00794-VMC
an individual,

**JAMES BRECH**,                      **COMPLAINT**
an individual,

**BRYAN SIEDEL,**                    **JURY TRIAL DEMANDED**
an individual,

**AMY STROTHER**,
an individual, AND

**KIRK BRISTOL,**
an individual.

      DEFENDANTS.

_____/

## AMENDED COMPLAINT

Plaintiffs, Omnipol, A.S., and ELMEX Praha, A.S., hereby file this Amended Complaint against Defendants Christopher Worrell, James Brech, Bryan Siedel, Amy Strother, and Kirk Bristol for fraud, unjust enrichment, and State and Federal Racketeer Influenced and Corrupt Organization (RICO) violations. In support thereof, Plaintiffs state:

## **INTRODUCTION**

Defendants collectively, and with the cooperation of unnamed co-conspirators, planned and executed a fraudulent scheme that targeted and fleeced the U.S. Special Operations Command ("SOCOM") over several years. Defendants Worrell and Brech formed Purple Shovel, LLC ("Purple Shovel"), which was licensed to engage in international arms transactions. Defendants Bristol, Siedel, and Strother, as civilian contracting officers at SOCOM, illicitly issued prime contracts to Defendants Worrell and Brech through Purple Shovel (the vehicle used by Defendants for fraudulent purposes) to purchase and deliver arms, ammunition, and related supplies to SOCOM. Defendants Worrell and Brech then procured and supplied to SOCOM defective weapons and ammunition that had little to no value. Yet under the watchful eyes of Defendants Siedel, Strother, and Bristol, these arms and munitions passed SOCOM inspection. SOCOM massively overpaid for the defective goods, and once the SOCOM contracts were paid out to Defendants Worrell and Brech through Purple Shovel, the Defendants all split the illegally obtained profits among themselves.

The scheme began to unravel when defective weapons supplied to SOCOM resulted in the death of a former U.S. Soldier and the serious injury of another. This resulted in government investigations and threatened Purple Shovel's license under ITAR. Under such circumstances, Purple Shovel was actually ineligible to receive further SOCOM contracts under SOCOM's own policies and procedures. Purple Shovel nevertheless continued to receive contracts with the collusion of Defendants Seidel, Strother and Bristol and continue their fraudulent scheme in a recalibrated fashion.

First, Defendants Worrell and Brech purchased a gun shop (Tactical Speed, LLC) in Virginia, thereby acquiring an alternative ITAR license, if needed to avert further investigation.

Regardless of Purple Shovel's history of delivering defective weapons, Defendants Siedel, Strother, and Bristol continued awarding prime SOCOM contracts to Defendants Worrell and Brech through Purple Shovel, knowing that Purple Shovel was actually ineligible. Defendants now shifted their sights to subcontractors such as Plaintiffs, which could deliver compliant weapons. It was the conspiracy's denouement: (1) obtain a SOCOM contract for Purple Shovel with complicity of corrupt contracting officers; (2) secure a foreign subcontractor to manufacture and deliver weapons to SOCOM, while making misrepresentations to the subcontractor about why payment for weapons prior to delivery to U.S. government is not necessary; (3) invoice SOCOM for the weapons; (4) cheat the subcontractor out of the money it is owed for the weapons once the invoice is paid directly to Purple Shovel; (5) divert money received for payment to subcontractor to accounts of co-conspirator; and (6) dump the vehicle of the fraud, Purple Shovel, into bankruptcy. Plaintiffs Omnipol and Elmex were the victims of Defendants' end-game fraud. On or about May 3, 2016, they were induced to manufacture and deliver 7,500 AK-47 assault rifles to SOCOM under a partial contract. The subcontract price of $2,984,250 was paid by SOCOM to Purple Shovel and diverted by Defendants for their own use. Possibly the most brazen evidence of this fraudulent scheme is a memo from Defendant Strother dated August 24, 2016, directed to SOCOM prime contractors who might be interested in bidding on the remaining portion of the weapons contract. Even though Omnipol and Elmex are located in the Czech Republic, and both were already engaged as subcontractors in the same weapons contract, she states falsely as a condition for bidding that sale and manufacture in the Czech Republic, a NATO ally of our country, is prohibited.  Defendant Strother was making sure her co-conspirators would face no obstacles as the fraud was extended. The Defendants' conduct constitutes illegal conspiracy to engage in fraud and racketeering.

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over the federal claims in this action in accordance with 28 U.S.C. § 1331, as the claims raise federal questions under the laws of the United States.

2.

This Court has jurisdiction over the claims in this action in accordance with 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and is between citizens of this State and subjects or citizens of a foreign state.

3.

This Court has personal jurisdiction over the Defendants as they are domiciled within this District.

4.

Venue is proper in the Middle District of Florida, Tampa Division, as the Defendants reside in this District and all, or a substantial part of all, the events giving rise to the claims in this Complaint occurred within this District.

## PARTIES

5.

At all times relevant to this Complaint, Defendant Christopher Worrell was an executive officer of Purple Shovel, a Florida registered Limited Liability Company with a principle place of business in Hillsborough County, Florida. At all times relevant to this Complaint, Christopher Worrell resided within Orange County, Florida. As an executive officer of Purple Shovel, Christopher Worrell participated in a scheme with the other Defendants to commit fraud and

wire and mail fraud against the Plaintiffs in connection with SOCOM contracts obtained through Purple Shovel.

6.

At all times relevant to this Complaint, Defendant James Brech was an executive officer of Purple Shovel, a Florida registered Limited Liability Company with a principle place of business in Hillsborough County, Florida. As an executive officer of Purple Shovel, James Brech participated in a scheme with the other Defendants to commit fraud and wire and mail fraud against the Plaintiffs in connection with military contracts obtained through Purple Shovel.

7.

At all times relevant, Defendant Bryan Siedel was a civilian contracting officer for SOCOM charged with issuing and overseeing prime contracts for the purchase and delivery of arms, ammunition, and related goods. Defendant Siedel issued and oversaw SOCOM contracts to Purple Shovel with full knowledge that Purple Shovel was created and operated as a fraudulent vehicle/enterprise to defraud Plaintiffs and others and that Purple Shovel was, in fact, the instrument used by Defendants to defraud Plaintiffs. Seidel shared in the proceeds realized from the fraudulent scheme.

8.

At all times relevant, Defendant Amy Strother was a civilian contracting officer for SOCOM charged with issuing and overseeing prime contracts for the purchase and delivery of arms, ammunition and related goods. Defendant Strother issued and oversaw SOCOM contracts to Purple Shovel with full knowledge that Purple Shovel was created and operated as a fraudulent vehicle/enterprise to defraud Plaintiffs and others and that Purple Shovel was, in fact,

the instrument used by Defendants to defraud Plaintiffs. Strother shared in the proceeds realized from the fraudulent scheme.

9.

At all times relevant, Defendant Kirk Bristol was a civilian contracting officer for SOCOM charged with issuing and overseeing prime contracts for the purchase and delivery of arms, ammunition, and related goods. Defendant Siedel issued and oversaw SOCOM contracts to Purple Shovel with full knowledge that Purple Shovel was created and operated as a fraudulent vehicle/enterprise to defraud Plaintiffs and others and that Purple Shovel was, in fact, the instrument used by Defendants to defraud Plaintiffs. Seidel shared in the proceeds realized from the fraudulent scheme.

10.

Plaintiff Omnipol, A.S., at all times relevant to this Complaint, was a private limited company registered in the Czech Republic, with a principle place of business in Prague. Omnipol was the victim of the Defendants' scheme to commit fraud and mail and wire fraud in connection with a subcontract under a military contract obtained by Purple Shovel, LLC.

11.

Plaintiff ELMEX Praha, a.S., at all times relevant to this Complaint, was a private limited company registered in the Czech Republic, with a principle place of business in Prague. ELMEX Praha, a.S. was the victim of the Defendants' scheme to commit fraud and mail and wire fraud in connection with a subcontract under a military contract obtained by Purple Shovel, LLC.

## STATEMENT OF FACTS

**A.  The Association Part 1: Defendants Bryan Siedel, Amy Strother, and Kirk Bristol as civilian contracting officers**

12.

At all times relevant, Defendant Bryan Siedel was a civilian contractor with the U.S. Special Operations Command ("SOCOM").

13.

At all times relevant, Defendant Amy Strother was a civilian contractor with the U.S. Special Operations Command ("SOCOM").

14.

At all times relevant, Defendant Kirk Bristol was a civilian contractor with the U.S. Special Operations Command ("SOCOM").

15.

At all times relevant, Defendant Bryan Siedel had the authority to approve SOCOM contracts with prime contractors for the purpose of securing arms and ammunition for use by the U.S. Government.

16.

At all times relevant, Defendant Amy Strother had the authority to approve SOCOM contracts with prime contractors for the purpose of securing arms and ammunition for use by the U.S. Government.

17.

At all times relevant, Defendant Kirk Bristol had the authority to approve SOCOM contracts with prime contractors for the purpose of securing arms and munitions for use by the U.S. Government.

18.

At all times relevant, Defendant Bryan Siedel had the obligation to ensure that arms and ammunition delivered under a SOCOM contract he approved met all applicable requirements, prior to approving payments to a subcontractor under said SOCOM contract.

19.

At all times relevant, Defendant Amy Strother had the obligation to ensure that arms and ammunition delivered under a SOCOM contract she approved met all applicable requirements, prior to approving payments to a subcontractor under said SOCOM contract.

20.

At all times relevant, Defendant Kirk Bristol had the obligation to ensure that arms and ammunition delivered under a SOCOM contract he approved met all applicable requirements, prior to approving payments to a subcontractor under said SOCOM contract.

**B. The Association Part 2: Christopher Worrell, Benjamin Worrell, and James Brech form Purple Shovel, the vehicle company used to defraud victims of Defendants' scheme**

21.

Benjamin Worrell is the Managing Member of Purple Shovel, LLC, a Florida registered LLC. In addition, Benjamin Worrell was the principal of Purple Shovel, LLC, incorporated in Delaware and registered as a foreign corporation with the State of Virginia. That Virginia registration has been cancelled.

22.

Prior to the formation of Purple Shovel, Benjamin Worrell and Defendant Bryan Siedel knew each other and associated with each other in public and private.

23.

Prior to the formation of Purple Shovel, Defendant Christopher Worrell and Defendant Bryan Siedel knew each other and associated with each other in public and private.

24.

Prior to the formation of Purple Shovel, Benjamin Worrell and Defendant Amy Strother knew each other and associated with each other in public and private.

25.

Prior to the formation of Purple Shovel, Christopher Worrell and Defendant Amy Strother knew each other and associated with each other in public and private.

26.

Prior to the formation of Purple Shovel, Benjamin Worrell and Defendant Kirk Bristol knew each other and associated with each other in public and private.

27.

Prior to the formation of Purple Shovel, Christopher Worrell and Defendant Kirk Bristol knew each other and associated with each other in public and private.

**B. The Scheme: The Association works together in furtherance of their fraudulent scheme**

28.

As a civilian contractor, Defendant Bryan Siedel authorized SOCOM contracts with Benjamin Worrell and Defendants Christopher Worrell and James Brech, through Purple Shovel, for the purchase and delivery of arms, ammunition, and related goods to SOCOM under a Basic Ordering Agreement, or BOA.

29.

As a civilian contractor, Defendant Amy Strother authorized SOCOM contracts with Benjamin Worrell and Defendants Christopher Worrell and James Brech, through Purple Shovel, for the purchase and delivery of arms, ammunition, and related goods to SOCOM under a Basic Ordering Agreement, or BOA.

30.

As a civilian contractor, Defendant Kirk Bristol authorized SOCOM contracts with Benjamin Worrell and Defendants Christopher Worrell and James Brech, through Purple Shovel, for the purchase and delivery of arms, ammunition, and related goods to SOCOM under a Basic Ordering Agreement, or BOA.

31.

After Defendants Siedel, Strother, and Bristol authorized the SOCOM contracts, Benjamin Worrell and Defendants Christopher Worrell and James Brech then knowingly procured severely defective and near valueless arms, ammunition and related supplies as inexpensively as possible in the European secondary arms market.

32.

In certain cases, Benjamin Worrell and Defendants Christopher Worrell and James Brech re-painted the arms, ammunition (which was of Chinese origin and thus illegal to purchase under U.S. law), and related supplies to mask its archaic age before delivering the arms, ammunition, and related supplies to the U.S. Government under SOCOM contracts.

33.

Once the old and defective arms and illegal ammunition were delivered to SOCOM, Defendant Bryan Siedel ensured that the arms and ammunition passed all inspections, despite

being informed by Benjamin Worrell that the arms and ammunition had been re-painted and were severely defective.

34.

Once the old and defective arms and illegal ammunition were delivered to SOCOM, Defendant Amy Strother ensured that the arms and ammunition passed all inspections, despite being informed by Benjamin Worrell that the arms and ammunition had been re-painted and were severely defective.

35.

Once the old and defective arms and illegal ammunition were delivered to SOCOM, Defendant Kirk Bristol ensured that the arms and ammunition passed all inspections, despite being informed by Benjamin Worrell that the arms and ammunition had been re-painted and were severely defective.

36.

Once SOCOM accepted the defective and valueless arms and illegal ammunition, Defendant Bryan Siedel authorized payment to Benjamin Worrell and Defendants Christopher Worrell and James Brech, through Purple Shovel, under the relevant SOCOM contract. When Benjamin Worrell and Defendants Christopher Worrell and James Brech received the payment, they paid Defendant Bryan Siedel kickback money for ensuring that known defective weapons and ammunition passed inspection.

37.

Once SOCOM officially accepted the defective and valueless arms and illegal ammunition, Defendant Amy Strother authorized payment to Benjamin Worrell and Defendants Christopher Worrell and James Brech, through Purple Shovel, under the relevant SOCOM

contract. When Benjamin Worrell and Defendants Christopher Worrell and James Brech received the payment, they paid Defendant Amy Strother kickback money for ensuring that known defective weapons and ammunition passed inspection.

38.

Once SOCOM officially accepted the defective and valueless arms and illegal ammunition, Defendant Kirk Bristol authorized payment to Benjamin Worrell and Defendants Christopher Worrell and James Brech, through Purple Shovel, under the relevant SOCOM contract. When Benjamin Worrell and Defendants Christopher Worrell and James Brech received the payment, they paid Defendant Kirk Bristol kickback money for ensuring that known defective weapons and ammunition passed inspection.

**C. Scheme Gone South: Purple Shovel is Threatened with Blacklisting by the U.S. Government**

39.

The defective weapons and ammunition were field tested by special operatives of the U.S. Military. While being tested, defective munitions supplied by Benjamin Worrell and Defendants Christopher Worrell and James Brech exploded in the hands of two retired U.S. soldiers, killing one and severely injuring another.

40.

After the death and severe injury of the U.S. soldiers, an investigation ensued and it was found that despite the government paying millions, the weapons and ammunition delivered by Benjamin Worrell and Defendants Christopher Worrell and James Brech and authorized and approved by Defendants Bryan Siedel, Amy Strother, and Kirk Bristol, were painted, defective, and near valueless.

41.

Understandably, U.S. Government officials were outraged and began investigations into fraud and misconduct by Benjamin Worrell and Defendants Christopher Worrell and James Brech, and Purple Shovel that effectively made them ineligible to enter into SOCOM contracts for the purchase and delivery arms, ammunition, and related goods.

42.

Purple Shovel's ITAR license, which is the only legal manner for Benjamin Worrell and Defendants Christopher Worrell and James Brech, through Purple Shovel, to enter into SOCOM contracts for the delivery of arms and ammunition to the U.S. Government, was seriously threatened.

43.

Without an ITAR license, Benjamin Worrell and Defendants Christopher Worrell, James Brech, and the vehicle company Purple Shovel, could not lawfully enter into any of the subject SOCOM contracts.

44.

At all times relevant, Defendant Bryan Siedel had an obligation to ensure that he did not approve a SOCOM contract with a prime contractor that was ineligible under SOCOM practices and procedures.

45.

At all times relevant, Defendant Amy Strother had an obligation to ensure that he did not approve a SOCOM contract with a prime contractor that was ineligible under SOCOM practices and procedures.

46.

At all times relevant, Defendant Kirk Bristol had an obligation to ensure that he did not approve a SOCOM contract with a prime contractor that was ineligible under SOCOM practices and procedures.

**D. Purple Shovel targets new victims, subcontractors, for defrauding**

47.

With the full knowledge of the contracting officers (Defendants Bryan Siedel, Amy Strother, and Kirk Bristol), Benjamin Worrell and Defendants Christopher Worrell and James Brech began targeting subcontractors in order to dupe subcontractors into fronting the money for the purchase and delivery of *quality* arms, ammunition, and related goods as specified by the subject SOCOM contracts.

48.

At all times relevant, Defendant Bryan Siedel knew that Benjamin Worrell and Defendants Christopher Worrell and James Brech were using Purple Shovel to execute an unlawful scheme of defrauding subcontractors, as evidenced by the fact that even after Purple Shovel was being investigated for misconduct by the U.S. Government, Siedel still approved Purple Shovel for SOCOM contracts for which is was ineligible.

49.

At all times relevant, Defendant Amy Strother knew that Benjamin Worrell and Defendants Christopher Worrell and James Brech were using Purple Shovel to execute an unlawful scheme of defrauding subcontractors, as evidenced by the fact that even after Purple Shovel was being investigated for misconduct by the U.S. Government, Strother still approved Purple Shovel for SOCOM contracts for which is was ineligible.

50.

At all times relevant, Defendant Kirk Bristol knew that Benjamin Worrell and Defendants Christopher Worrell and James Brech were using Purple Shovel to execute an unlawful scheme of defrauding subcontractors, as evidenced by the fact that even after Purple Shovel was being investigated for misconduct by the U.S. Government, Bristol still approved Purple Shovel for SOCOM contracts for which is was ineligible.

**E. The Association uses their new scheme to specifically target Plaintiffs**

51.

On June 7, 2016, Defendant Bryan Siedel, acting as a civilian contracting officer for SOCOM, issued a partial SOCOM contract to Purple Shovel for the purchase of arms, ammunition, and related supplies, including 7,500 AK-47 Assault Rifles. This contract, H92222-16-G-0006, was in the amount of $2,984,250 (hereinafter the "SOCOM Contract").

52.

On June 7, 2016, Defendant Amy Strother, acting as a civilian contracting officer for SOCOM, issued a partial SOCOM contract with Purple Shovel or the purchase of arms, ammunition, and related supplies, including 7,500 AK-47 Assault Rifles. This contract, H92222-16-G-0006, was in the amount of $2,984,250 (hereinafter the "SOCOM Contract").

53.

On June 7, 2016, Defendant Kirk Bristol, acting as a civilian contracting officer for SOCOM, issued a partial SOCOM contract to Purple Shovel for the purchase of arms, ammunition, and related supplies, including 7,500 AK-47 Assault Rifles. This contract, H92222-16-G-0006, was in the amount of $2,984,250 (hereinafter the "SOCOM Contract").

54.

On May 3, 2017, Benjamin Worrell, as CEO of Purple Shovel, notified ELMEX Praha, a.S. (hereinafter "ELMEX") by email that they were hired as the subcontractor to provide the AK-47 Assault Rifles that SOCOM was to purchase under contract H92222-16-G-00063.

55.

ELMEX then selected Omnipol, a.S. (hereinafter "Omnipol") as its supplier under the subcontract.

56.

Thereafter, Benjamin Worrell sent ELMEX and Omnipol a Cooperation Agreement (hereinafter the "Contract"). These parties entered into said Agreement on June 26, 2017, memorializing their agreement under the awarded subcontract.

57.

The materiel ordered under the Contract was delivered and accepted by SOCOM on July 20, 2017.

58.

ELMEX invoiced Purple Shovel on July 27, 2017, as per the Contract, for the total amount due, $2,984,250.

**D.  The Association presents fraudulent representations to Plaintiffs**

59.

Benjamin Worrell, as the CEO of Purple Shovel, agreed by mail, email, and telephone, to pay Plaintiffs the $2,984,250 provided to Purple Shovel from SOCOM upon the completion of the Contract.

60.

Benjamin Worrell also provided, again by mail and email, an End Use Certificate from SOCOM, verifying that this subcontract was pursuant to a SOCOM contract and that payment would be made by SOCOM.

61.

The Contract, which was signed by Benjamin Worrell and provided to Plaintiffs by email and regular mail, additionally provides that Purple Shovel would pay the final payment to ELMEX, by wire transfer, within 10 days of Purple Shovel receiving payment from SOCOM.

62.

At the time these representations were made, Benjamin Worrell and Defendants Christopher Worrell and James Brech knew that Plaintiffs would be required to expend millions of their own money to procure and deliver the AK-47s to SOCOM, pursuant to the Contract. Benjamin Worrell and Defendants Christopher Worrell and James Brech knew this because these facts were discussed and negotiated prior to entering the subcontract. Plaintiffs relied on Defendants' misrepresentations to their detriment. Once SOCOM paid Purple Shovel for the weapons, Defendants diverted the subcontract proceeds to an unnamed co-conspirator.

## COUNT I

### FRAUD
**(Against all Defendants)**

63.

Plaintiffs incorporate paragraphs 1-62 as if fully restated and re-alleged herein.

64.

Based on the facts incorporated support this Count and the allegations within this Count, Benjamin Worrell and Defendants Christopher Worrell and James Brech made false statements

to Plaintiffs that they, through Purple Shovel, would pay the amount due on the SOCOM Contract. The payment of Plaintiffs under the Contract is a material fact in the Contract.

65.

Based on the facts incorporated to support this Count and the allegations within this Count, Benjamin Worrell and Defendants Christopher Worrell and James Brech knew that they would not make said payment when the funds from SOCOM arrived. All Defendants were engaged in a scheme to defraud Plaintiffs and divert proceeds to unnamed co-conspirators.

66.

Based on the facts incorporated to support this Count and the allegations within this Count, all Defendants intended that Plaintiffs would rely on Benjamin Worrell and Defendants Christopher Worrell and James Brech's misrepresentations and enter into the Contract, based on the incorporated assurances and the promise that a wire transfer would be made within 10 days of receipt of the subject funds from SOCOM.

67.

Based on the facts incorporated to support this Count and the allegations within this Count, Plaintiffs did, in fact, rely on Benjamin Worrell and Defendants Christopher Worrell and James Brech's misrepresentations and enter into the Contract. Plaintiffs procured, manufactured, and delivered the required materiel at great cost. Plaintiffs also lost business opportunities that could have been conducted within that same time. The transfer of funds from Defendants, through Purple Shovel, to Plaintiffs never happened, evidencing fraudulent inducement. As a result, Plaintiffs have been damaged in an amount not less than $2,984,250.

68.

Due to all Defendants' conduct, based on the facts incorporated into this Count and the allegations within this Count, Plaintiffs are entitled to damages and all other relief permitted by law.

69.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250; and

(b) punitive damages in an amount to be determined at trial.

## COUNT II
## CIVIL THEFT
### (Against All Defendants)

70.

Plaintiffs incorporate paragraphs 1-62 as if fully restated and re-alleged herein.

71.

Based on the facts incorporated to support this Count and the allegations within this Count, Benjamin Worrell and Defendants Christopher Worrell and James Brech transferred the funds paid by SOCOM to unnamed co-conspirators, knowing said funds were due to Plaintiffs.

72.

Based on the facts incorporated to support this Count and the allegations within this Count, all Defendants others participated by receiving and disbursing the funds to all Defendants for their personal use.

73.

Based on the facts incorporated to support this Count and the allegations within this Count, the intent of all Defendants was to deprive Plaintiffs of their right to those funds and to appropriate those funds for Defendants' own use, to which they were not entitled.

74.

Due to all Defendants' conduct, based on the facts incorporated into this Count and the allegations within this Count, Plaintiffs are entitled to damages and all other relief permitted by law.

75.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250; and

(b) punitive damages in an amount to be determined at trial.

### COUNT III
### UNJUST ENRICHMENT
### (Against All Defendants)

76.

Plaintiffs incorporate paragraphs 1-62 as if fully restated and re-alleged herein.

77.

Based on the facts incorporated to support this Count and the allegations within this Count, Plaintiffs, pursuant to the Contract, delivered the requested materiel to SOCOM, fulfilling their role in the larger SOCOM Contract. As a result, SOCOM transferred millions of dollars to Benjamin Worrell and Defendants Christopher Worrell and James Brech, through Purple Shovel.

78.

Based on the facts incorporated to support this Count and the allegations within this Count, all Defendants understood and appreciated that SOCOM paid the funds only as a result of the completion of the Contract by Plaintiffs. Nonetheless, all Defendants benefited from the completed Contract by transferring the money from Purple Shovel to unnamed co-conspirators, who deposited the funds into their accounts for the personal use of all Defendants.

79.

Based on the facts incorporated to support this Count and the allegations within this Count, Benjamin Worrell and Defendants Christopher Worrell and James Brech knowingly damaged Plaintiffs by refusing to pay them under the Contract, instead accepting SOCOM's payment and transferring the funds to unnamed co-conspirators, who deposited the funds into their accounts for the personal use of all Defendants.

80.

Due to the all Defendants' conduct, based on the facts incorporated into this Count and the allegations within this Count, Plaintiffs are entitled to damages and all other relief permitted by law.

81.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250; and

(b) punitive damages in an amount to be determined at trial.

## COUNT IV
## STATE RICO VIOLATIONS
**(Against All Defendants)**

82.

Plaintiffs incorporate paragraphs 1-62 as if fully restated and re-alleged herein.

83.

Based on the facts incorporated to support this Count and the allegations within this Count, the pre-conceived purpose of the Defendants' scheme was to form a pattern and practice of engaging subcontractors to pay for and deliver millions of dollars' worth of weapons to the U.S. Government. Then, once the U.S. Government paid Defendants, to keep the money owed to the subcontractors. This conduct has resulted in millions of dollars lost by Plaintiffs, not to mention other targets of this insidious scheme.

84.

Based on the facts incorporated to support this Count and the allegations within this Count, Benjamin Worrell and Defendants Christopher Worrell and James Brech knowingly and intentionally used electronic and snail mail to send intentionally false representations to Plaintiffs on multiple occasions and used wire transfers to misappropriate money known to be owed to Plaintiffs.

85.

Based on the facts incorporated to support this Count and the allegations within this Count, all Defendants have and continue to target subcontractors, who front the money for arms, ammunition, and related supplies that are then delivered to the United States. In other words, Benjamin Worrell and Defendants Christopher Worrell and James Brech, never spent a dime of their own; instead, in concert with other Defendants, the diverted and kept all monies earned, including Plaintiffs' owed money under the subject SOCOM Contract.

86.

Due to all Defendants' conduct, based on the facts incorporated into this Count and the allegations within this Count, the Plaintiffs are entitled to damages and all other relief permitted by law.

87.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250;

(b) a trebling of actual damages; and,

(c) an award of attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

**COUNT V**
**RICO § 1962(c)**
**(Against All Defendants)**

88.

Plaintiffs incorporate paragraphs 1-62 as if fully restated and re-alleged herein.

89.

Based on the facts incorporated to support this Count and the allegations within this Count, Benjamin Worrell and Defendants Christopher Worrell and James Brech are individuals who have associated to form Purple Shovel. Purple Shovel is a business used by Benjamin Worrell and Defendants Christopher Worrell and James Brech to engage in interstate commerce and whose activities affect interstate commerce.

90.

Based on the facts incorporated to support this Count and the allegations within this Count, all Defendants are employed by and/or associated with Purple Shovel.

91.

Based on the facts incorporated to support this Count and the allegations within this Count, all Defendants participated in the conduct of Purple Shovel's affairs through a pattern of racketeering activity, for the unlawful purpose of defrauding Plaintiffs.

92.

Based on the facts incorporated to support this Count and the allegations within this Count, pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts.

93.

In violation of 18 U.S.C. § 1341 (wire fraud), all Defendants entered a scheme with the specific intent of defrauding Plaintiffs. Communications via interstate and international wires were used to further the scheme, as well as email and telephone communications:

(a)     Plaintiffs were deceived by fraudulent misrepresentations contained in a letter that was emailed from Defendants to Plaintiff ELMEX on May 3, 2017. This letter represented that Plaintiffs were to be paid as subcontractors under SOCOM Contract H9222-16-0006;

(b)     Plaintiffs were deceived by fraudulent misrepresentations contained in the "Cooperation Agreement" dated June 26, 2017, which was emailed from Defendants to Plaintiffs on that same date and, again, represented that Plaintiffs would receive payment under SOCOM Contract H9222-16-0006;

(c)     Plaintiffs were deceived by fraudulent misrepresentations contained in the "Descriptions and Specifications/Statement of Work" of May 3, 2017, which was emailed and signed by Defendant Christopher Worrell and contained a false representation that Plaintiff

would be paid all but $11,000 of the contract price prior to delivery and acceptance of the weapons;

(d)     Based on the facts incorporated to support this Count and the allegations within this Count, Plaintiffs were deceived by fraudulent misrepresentations contained in an email from Defendant Bryan Seidel dated September 1, 2017, which stated that SOCOM's payment was delayed for technical reasons. Communications of this nature between a SOCOM contracting officer and a subcontractor is procedurally inappropriate and a violation of SOCOM practices and policies. The email was intended to reassure Plaintiffs that they would eventually receive payment, and was sent with the specific intent of deceiving Plaintiffs and dissuading them from communicating with SOCOM;

(e)      Based on the facts incorporated to support this Count and the allegations within this Count, and in violation of 18 U.S.C. § 2314 (National Stolen Property Act), Benjamin Worrell and Defendants Christopher Worrell and James Brech, as Purple Shovel, received payment in the amount of $2,984,250 from SOCOM for Plaintiffs and transferred said funds in totality unnamed co-conspirators who deposited the funds into bank accounts, in interstate commerce, with full knowledge that the funds were taken from Plaintiffs by fraud;

(f)     Based on the facts incorporated to support this Count and the allegations within this Count, and in violation of 18 U.S.C. § 1956, et seq., all Defendants engaged in an illegal money laundering transaction by taking possession of and subsequently distributing money lawfully owed to Plaintiffs under the SOCOM contract.

(g)     Based on the facts incorporated to support this Count and the allegations within this Count and related to and continuing from the fraudulent scheme perpetrated against Plaintiffs is Defendants' earlier scheme to defraud the government. Over a period of several

years, Benjamin Worrell and Defendants Christopher Worrell and James Brech, in concert with Defendants Bryan Siedel, Amy Strother, and Kirk Bristol, supplied SOCOM with defective arms and munitions that were worth substantially less in value than what was paid by SOCOM. Defendants' theft of money from the government violated 18 U.S.C. § 641.

(h)     On August 24, 2016, Defendant Strother issued a false and misleading communication using government computer systems and interstate communication systems advising SOCOM prime contractors falsely that weapons supplied through the remaining portion of the weapons contract that was partially contracted to Purple Shovel could not be sourced through the Czech Republic as that country was blacklisted. The statement was made with an intent to protect and further Defendants' scheme to defraud Plaintiffs.

94.

Based on the facts incorporated to support this Count and the allegations within this Count, the acts of wire fraud, theft, and money laundering, as set forth above, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

95.

Based on the facts incorporated to support this Count and the allegations within this Count, and in violation of 18 U.S.C. § 1962(c), all Defendants have directly and indirectly participated in conducting Purple Shovel's affairs through the patterns of racketeering activity described above.

96.

Based on the facts incorporated to support this Count and the allegations within this Count, and as a direct and proximate result of all Defendants' racketeering activities and

violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property. $5.5 million in earned proceeds from the Contract was converted by Defendants.

97.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250;

(b) a trebling of actual damages; and,

(c) an award of attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

## COUNT V
## RICO § 1962(d)
**(Against All Defendants)**

98.

Plaintiffs incorporate paragraphs 1-62 and 88-97 as if fully restated and re-alleged herein.

99.

Based on the facts incorporated to support this Count and the allegations within this Count, Defendants have all intentionally conspired and agreed to directly and indirectly participate in the conduct of Purple Shovel's affairs through a pattern of racketeering activity. Defendants all knew their acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme described above. The conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

100.

Based on the facts incorporated to support this Count and the allegations within this Count, and as a direct and proximate result of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and the violations of 18 U.S.C. § 1962(d), Plaintiffs have been

injured in their business and property in that $5.5 million in earned proceeds from the Contract to supply arms, ammunition, and related supplies to SOCOM was converted by Defendants.

101.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

(a) an award of actual damages in an amount no less than $2,984,250;

(b) a trebling of actual damages; and,

(c) an award of attorneys' fees, pursuant to 18 U.S.C. § 1964(d)

**COUNT VI**
**ATTORNEY FEES**
**(Against All Defendants)**

102.

Based on the facts alleged in this Complaint, Plaintiffs are entitled to attorneys' fees against all Defendants under Fla. Stats. §§ 772.11, 772.104, and all applicable laws.

WHEREFORE, Plaintiffs pray to this Court:

a)  That process issue and service be had on each Defendant;

b)  That a jury trial be had on all issues so triable;

c)  That Plaintiffs recover all costs of this litigation;

d)  That Plaintiffs be awarded all other expenses in an amount to be determined at trial, including attorneys' fees pursuant to Fla. Stats. §§ 772.11, 772.104, and all applicable laws;

e)  That Plaintiffs have judgment against Defendants for treble damages; and

f) That Plaintiffs receive such other and further relief as this Court deems just and proper.

Respectfully submitted on this 26th day of July 2019,

/s/ Dallas S. LePierre
DALLAS S. LEPIERRE
Florida Bar No. 101126
*Counsel for Plaintiff*

NDH LLC
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 254-0442 Telephone
(404) 935-9391 Facsimile
dlepierre@ndh-law.com
mdobbs@ndh-law.com

CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing AMENDED COMPLAINT to the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all parties of record.

Respectfully submitted on this 26th day of July 2019,

/s/ Dallas S. LePierre
DALLAS S. LEPIERRE
Florida Bar No. 101126
Counsel for Plaintiffs

NDH LLC
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 254-0442 Telephone
(404) 935-9391 Facsimile
dlepierre@ndh-law.com
mdobbs@ndh-law.com