UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OMNIPOL, a.S. and
ELMEX PRAHA, a.S.,

    Plaintiffs,

v.                                    Case No. 8:19-cv-794-T-33TGW

CHRISTOPHER WORRELL,
JAMES BRECH, BRYAN SIEDEL,
AMY STROTHER, and
KIRK BRISTOL,

    Defendants.
_____/

**ORDER**

    This cause comes before the Court pursuant to the Motions to Dismiss the Amended Complaint filed by Defendants Christopher Worrell, James Brech, and the United States on behalf of Defendants Bryan Siedel, Amy Strother, and Kirk Bristol, filed on August 9, 2019, August 23, 2019, and August 30, 2019, respectively. (Doc. ## 76, 86, 91). Plaintiffs Omnipol, a.S. and Elmex Praha, a.S. filed responses in opposition to all of the Motions, and the United States filed a reply. (Doc. ## 87, 95, 98, 102). For the reasons explained below, all of the Motions are granted and Plaintiffs' Amended Complaint is dismissed without leave to amend.

## I. **Background**

On April 3, 2019, Plaintiffs filed their original Complaint against these Defendants and four others: Multinational Defense Services, LCC, Angelo Saitta, Lisa Saitta, and Robert Para, alleging a fraudulent scheme between the officers and employees of Purple Shovel, LLC, and civilian contracting employees at the U.S. Special Operations Command (SOCOM). (Doc. # 1). In their original Complaint, Plaintiffs brought claims for fraud, civil theft, unjust enrichment, state and federal racketeering violations, and attorneys' fees. (Id.). Worrell, Multinational Defense, Angelo Saitta, and Lisa Saitta moved to dismiss the original Complaint. (Doc. ## 9, 12, 36).

On July 12, 2019, the Court held a hearing on the pending motions to dismiss. (Doc. # 62). The Court denied the motions to the extent they argued that the original Complaint was a shotgun pleading or failed to name an indispensable party, but it granted the motions on the basis that the original Complaint failed to comply with Federal Rule of Civil Procedure 9(b) and failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. # 59).

At the hearing, the Court explained that the allegations in the original Complaint failed to state a claim for fraud

against the moving Defendants because the original Complaint failed to meet Rule 9(b)'s heightened pleading standard. (Doc. # 79 at 19). The Court further found the Plaintiffs' civil theft allegations to be "speculative" and conclusory." (Id. at 21, 33). As to the unjust enrichment claim against Worrell, the Court explained that the claim "lacks sufficient detail" because it failed to describe certain key dates. (Id. at 46-47). The state and federal racketeering claims were not sufficiently pled because "the Complaint is not specific enough regarding Worrell's involvement in the scheme. [The racketeering counts] lump Christopher Worrell with Benjamin Worrell, Para, and Brech. It's too difficult to determine what Mr. Worrell actually did based on the facts alleged, and not enough specificity is provided regarding the time, place, and manner of the allegedly fraudulent scheme." (Id. at 47-48). As to the racketeering conspiracy claim, the Court found that "there is nothing in the Complaint that establishes a single conversation between the Worrells, Para, Brech, Multinational Defense, and the Saittas." (Id. at 30-31). Finally, the Court dismissed the claim for attorneys' fees because attorneys' fees are typically a remedy and not a stand-alone claim. (Id. at 31-32). The Court did, however, grant Plaintiffs leave to amend. (Doc. # 59).

On July 26, 2019, Plaintiffs filed an Amended Complaint. (Doc. # 70). As in the original Complaint, the Amended Complaint alleges the existence of two interrelated fraudulent schemes. First, Plaintiffs allege a multi-year "fraudulent scheme that targeted and fleeced" SOCOM. (Id. at 2). According to Plaintiffs, Purple Shovel is a company formed by non-party Benjamin Worrell, Christopher Worrell, and Brech that was licensed to engage in international arms transactions and was the "vehicle" for the fraud. (Id. at 2, 8, ¶¶ 5-6, ¶ 21). Purple Shovel has since filed for bankruptcy and is not a party to this action. (Doc. # 7).

Plaintiffs allege that Siedel, Strother, and Bristol, as civilian contracting officers at SOCOM, issued contracts to Purple Shovel to deliver arms and ammunition to SOCOM. (Doc. # 70 at 2, ¶¶ 12-14, ¶¶ 28-30). The supplies provided by Purple Shovel were allegedly "defective" and had "little to no value," but Siedel, Strother, and Bristol nonetheless helped them pass SOCOM inspection in exchange for alleged kickbacks. (Id. at 2, ¶¶ 31-38).

Second, Plaintiffs allege that Purple Shovel became ineligible to receive further SOCOM contracts. (Id. at 2-3, ¶¶ 39-46). So Defendants began bringing unwitting subcontractors, such as Omnipol and Elmex, into the scheme

because these subcontractors were capable of delivering supplies that met SOCOM's quality standards. (<u>Id.</u> at 3, ¶¶ 47-50). As part of this scheme, Plaintiffs allege that, on June 7, 2016, Siedel, Strother, and Bristol issued a "partial SOCOM contract" to Purple Shovel for 7,500 AK-47 assault rifles. (<u>Id.</u> at ¶¶ 51-53). Pursuant to that contract (the "SOCOM Contract"), SOCOM would pay Purple Shovel $2,984,250. (<u>Id.</u>).

On May 3, 2017, "Benjamin Worrell, as CEO of Purple Shovel, notified [Elmex] by email that they were hired as the subcontractor" on the SOCOM Contract, and Elmex then selected Omnipol as the supplier on the contract. (<u>Id.</u> at ¶¶ 54-55). Both Elmex and Omnipol are companies registered in the Czech Republic. (<u>Id.</u> at ¶¶ 10-11).

On June 26, 2017, Benjamin Worrell sent Plaintiffs a Cooperation Agreement between Plaintiffs and Purple Shovel "memorializing their agreement under the awarded subcontract." (<u>Id.</u> at ¶ 56). The Cooperation Agreement provided that Purple Shovel would pay Elmex via wire transfer within 10 days of Purple Shovel receiving payment from SOCOM. (<u>Id.</u> at ¶ 61). According to Plaintiffs, Benjamin Worrell signed the Cooperation Agreement on behalf of Purple Shovel. (<u>Id.</u>).

On July 20, 2017, SOCOM accepted delivery of the weapons. (Id. at ¶ 57). On July 27, 2017, Elmex invoiced Purple Shovel for the total amount due under the Cooperation Agreement, $2,984,250. (Id. at ¶ 58). Plaintiffs allege that Benjamin Worrell, as CEO of Purple Shovel, "agreed by mail, email, and telephone to pay Plaintiffs the $2,984,250 provided to Purple Shovel from SOCOM," and that Benjamin Worrell also provided to Plaintiffs an "End Use Certificate from SOCOM, verifying that this subcontract was pursuant to a SOCOM contract and that payment would be made by SOCOM." (Id. at ¶¶ 59-60). According to Plaintiffs, "[o]nce SOCOM paid Purple Shovel for the weapons, Defendants diverted the subcontract proceeds to an unnamed co-conspirator," who then disbursed the funds among all Defendants.[1] (Id. at ¶¶ 62, 72, 77-79, 93(e)).

Based on these allegations, Plaintiffs bring claims for fraud (Count I), civil theft (Count II), unjust enrichment (Count III), state racketeering violations (Count IV),

---

[1] Although Plaintiffs nominally removed Defendants Multinational Defense, Para, and the Saittas from the Amended Complaint, Plaintiffs reference them throughout as "unnamed co-conspirators." Compare (Doc. # 70 at ¶¶ 65, 71, 78-79); with (Doc. # 1 at ¶¶ 75, 78, 81, 87, 94-95). Pursuant to the Plaintiffs' Notice of Voluntary Dismissal of all claims against Multinational Defense, Para, and the Saittas, the Court has dismissed those Defendants from the case without prejudice. (Doc. ## 81, 85).

violations of the federal Racketeer Influenced and Corrupt Organizations Act (RICO) (Count V), RICO conspiracy (Count VI), and attorneys' fees (Count VII).[2] (Id. at 17-29).

On August 30, 2019, the United States filed three Notices of Substitution, stating that the United States was to be substituted for Defendants Siedel, Strother, and Bristol pursuant to the Westfall Act, 28 U.S.C. § 2679, on Counts I through IV and VII. (Doc. ## 88-90). The United States attached to each Notice a certification from the United States Attorney for the Middle District of Florida stating that Siedel, Strother, and Bristol were acting within the course and scope of their federal employment at the time of the alleged incidents giving rise to the Amended Complaint. (Doc. ## 88-1, 89-1, 90-1).

Christopher Worrell and Brech (the Purple Shovel Defendants) each filed a Motion to Dismiss the Amended Complaint or, In the Alternative, For More Definite Statement, to which Plaintiffs responded. (Doc. ## 76, 86, 87, 95). The United States, on behalf of Siedel, Strother, and Bristol (the Federal Defendants) filed one consolidated

---

[2] The Amended Complaint mislabels the conspiracy and attorneys' fees claims as Counts V and VI, respectively. The Court will use the correct count numbers given above.

Motion to Dismiss the Amended Complaint. (Doc. # 91). Plaintiffs responded, and the United States replied. (Doc. ## 98, 102). The Motions are now ripe for review.

## II. **Legal Standard**

For allegations of fraud, a plaintiff must "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1359 (11th Cir. 2006) (internal quotation marks omitted).

Under Rule 9(b), plaintiffs must allege (1) precisely what statements were made in what documents or what oral misrepresentations were made; (2) the time, place, and person responsible for the statement; (3) the content of such statements and the manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371, 1380–81 (11th Cir. 1997). In other words, to satisfy Rule 9(b), a plaintiff must establish the who, what, when, where, and how of the fraud. Mizarro v. Home

<u>Depot, Inc.</u>, 544 F.3d 1230, 1237 (11th Cir. 2008). In cases involving multiple defendants, a complaint alleging fraud must "reasonably notify the defendants of their purported role in the scheme" and "inform each defendant of the nature of his alleged participation in the fraud." <u>Brooks</u>, 116 F.3d at 1381.

On a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope

of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).[3]

## III. **Analysis**

All Defendants seek dismissal of the Amended Complaint for failure to meet the pleading standards enunciated in Rules 8, 9(b), and 12(b)(6). See (Doc. ## 76, 86, 91). However, before turning to this issue, the Court must address the Government's argument that Counts I through IV and VII should be dismissed as against the Federal Defendants for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (Doc. # 91 at 1-2, 7, 10).

### A. **Subject-Matter Jurisdiction**

The United States argues that, once it filed the Notices of Substitution, it was, by operation of law, substituted for Strother, Siedel, and Bristol as Defendant for Counts I through IV and VII, pursuant to the Westfall Act, 28 U.S.C.

---

[3] For this reason, the Court has not considered the documents attached to the Motions to Dismiss or the responses thereto. Although the Court could have properly taken judicial notice of the documents filed in Purple Shovel's bankruptcy case as a matter of public record, it need not rely on those documents to resolve the Motions to Dismiss. See Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (explaining that courts may take judicial notice of public records that are not subject to reasonable dispute in deciding a motion to dismiss).

§ 2679(d). (Doc. # 91 at 1 n.1). What's more, the Government argues that, under the Federal Tort Claims Act (FTCA), the Plaintiffs' exclusive remedy is against the United States on their state-law claims. (Id. at 9). And because the FTCA does not waive sovereign immunity for claims based on fraud, the Government submits that the Court should dismiss Counts I through IV and VII against the Federal Defendants for lack of subject-matter jurisdiction. (Id. at 9-10). The Government also argues that dismissal for lack of subject-matter jurisdiction is appropriate here because Plaintiffs have failed to exhaust their administrative remedies. (Id. at 11-12). The Government concedes that the FTCA does not govern Counts V and VI, Plaintiffs' claims for alleged violations of the federal RICO statutes. (Id. at 10 n.8).

In their response, Plaintiffs vehemently object to the Government's certification that the Federal Defendants were acting within the scope of their employment. (Doc. # 98 at 4). According to the Plaintiffs, "[b]ased on this objection, the Government is not a proper party to this action and [the] FTCA does not apply." (Id.). Plaintiffs point out that, under applicable law, the Government's certification is not dispositive. (Id. at 7). Plaintiffs argue that Siedel, Strother, and Bristol are the proper parties to this action

because none of them were acting within the scope of their employment when carrying out the fraudulent schemes because the Federal Defendants' actions were not meant to serve their employer, the Government, but were meant purely to enrich themselves. (Id. at 5, 8, 9, 10). Plaintiffs request leave to conduct jurisdictional discovery and an evidentiary hearing on this issue. (Id. at 11, 12).

In its reply, the Government argues that substitution of the United States was proper under the Westfall Act and that Plaintiffs have not met their burden to challenge the United States Attorney's certification. (Doc. # 102 at 1, 3-4). The Government argues that, to overcome the certification, Plaintiffs must come forward with evidence proving, by a preponderance of the evidence, that the employees were acting outside the scope of their employment. (Id. at 4). Because Plaintiffs have offered no specific evidence, or even a forecast of specific evidence, to contradict the certification, no discovery or hearing is needed. (Id. at 5).

### 1. The Westfall Act and Whether Substitution of the United States is Proper

When a federal employee is sued, the Westfall Act allows the United States Attorney General to certify that such federal employee defendant was acting within the scope of his

or her office or employment at the time of the incident out of which the claim arose. 28 U.S.C. § 2679(d)(1). Upon the Attorney General's certification, any civil action commenced upon such a claim against a federal employee in a federal district court "shall be deemed an action against the United States," and the United States "shall be substituted as the party defendant." Id. The authority to make such certification has been delegated to the United States Attorney for the district where the civil action is brought. 28 C.F.R. § 15.4. When such certification is made, the civil action "shall proceed in the same manner as any action against the United States filed pursuant to [28 U.S.C. § 1346(b)] and shall be subject to the exceptions and limitations applicable to those actions." 28 U.S.C. § 2679(d)(4).

Upon the certification of the Attorney General, the federal employee is dismissed from the action, and the United States is substituted as defendant in the employee's place. Osborn v. Haley, 549 U.S. 225, 230 (2007). Indeed, "[i]f the action is commenced in a federal court, and the Attorney General certifies that the employee 'was acting within the scope of his office or employment at the relevant time,' the United States **must** be substituted as the defendant." Id. at 241 (quoting 28 U.S.C. § 2679(d)(1)) (internal alterations

omitted) (emphasis added). Thereafter, the litigation is governed by the FTCA. Id. at 230.

However, both the Eleventh Circuit and the U.S. Supreme Court have held that the Attorney General's certification decision is subject to judicial review. Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 431, 434 (1995) (determining that the Attorney General's certification "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee"); see also Id. at 432 ("[T]he Attorney General's scarcely disinterested certification on that matter is by statute made the first, but not the final word."); S.J. & W. Ranch, Inc. v. Lehtinen, 913 F.2d 1538, 1542, 1544 (11th Cir. 1990), amended by 924 F.2d 1555 (11th Cir. 1991) (concluding that a plaintiff "is entitled to litigate the question of whether the employee was acting within the scope of his employment when the challenged conduct occurred").

If a plaintiff challenges the scope-of-employment certification, the district court must review the certification de novo. Lehtinen, 913 F.2d at 1543 (explaining that the district court should not defer to the Attorney General's certification but should instead review the question de novo). Whether an employee's actions are within

14

the scope of his employment for purposes of the Westfall Act involves a question of law as well as a question of fact, and is an issue governed by the law of the state where the incident occurred. Id. at 1542.

In the course of the district court's *de novo* review, the Attorney General's certification serves as *prima facie* evidence that the employee conduct at issue occurred within the scope of employment. Id. at 1543. "The burden of altering the status quo by proving that the employee acted outside the scope of employment is, therefore, on the plaintiff." Id.

"In conducting this *de novo* review, the question of whether a given act falls within the scope of employment is highly fact-specific, and turns on the unique circumstances of the case at bar." Hendrix v. Snow, 170 F. App'x 68, 82 (11th Cir. 2006) (internal alterations omitted). Significantly, the Supreme Court has explained that the United States "must remain the federal defendant in the action unless and until the District Court determines that the employee, **in fact**, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." Osborn, 549 U.S. at 231 (emphasis in original).

Here, Plaintiffs have challenged the Attorney General's certification and argue that the Federal Defendants were

acting outside the scope of their employment in committing the acts alleged in the Amended Complaint. Thus, this Court must review *de novo* whether the Federal Defendants' conduct was within the scope of their employment. See <u>Lehtinen</u>, 913 F.2d at 1543. The Court is entitled to treat the U.S. Attorney's certification as *prima facie* evidence that the Federal Defendants' conduct occurred within the scope of their employment at SOCOM and, thus, Plaintiffs have the burden of showing that the Federal Defendants' acted outside the scope of their employment, such that substitution would be improper. See <u>Id.</u>

The parties disagree, however, on how Plaintiffs may make this showing. Plaintiffs rely on the allegations in their Amended Complaint and seek jurisdictional discovery and an evidentiary hearing to adduce further evidence on this issue. The Government maintains that, because Plaintiffs have not come forward at this stage with any evidence or a forecast of specific evidence, discovery should not be allowed and the certification and substitution should stand.

While the Eleventh Circuit in <u>Lehtinen</u> remanded for the district court to permit the plaintiff "full discovery on the scope question" and ordered the district court to conduct a *de novo* hearing on the scope-of-employment issue, 913 F.2d at

1544, "nothing mandates that a district court allow discovery and hold an evidentiary hearing before ruling on a section 2679 certification." Glover v. Donahoe, 626 F. App'x 926, 930 (11th Cir. 2015); see also Pritchett v. Milstid, 891 F. Supp. 1541, 1544 (S.D. Ala. 1995) ("The Eleventh Circuit has not suggested, however, that an evidentiary hearing is required or that discovery must be permitted every time the Attorney General's certification is challenged."). The question, then, is what serves to unlock the limited discovery that Plaintiffs seek – is it merely the allegations in the Amended Complaint, taken as true, or is there an extra showing that Plaintiffs must first make? The Court could not locate, nor do the parties point to, any Eleventh Circuit case law on this issue. Other Circuit Courts of Appeal have taken different approaches.

The Court of Appeals for the District of Columbia Circuit has written: "Because the plaintiff cannot discharge [his] burden without some opportunity for discovery, the district court may permit limited discovery and hold an evidentiary hearing to resolve a material factual dispute regarding the scope of the defendant's employment." Stokes v. Cross, 327 F.3d 1210, 1214 (D.C. Cir. 2003). To unlock this limited discovery, the plaintiff need only plead facts that, taken as

true, would establish that the defendants' actions exceeded the scope of their employment. Id. at 1215.

Likewise, the Third Circuit has determined that, where an Attorney General's certification clashes with the allegations in the complaint, "the plaintiff should be permitted reasonable discovery and should then be called upon to come forward, as if responding to a motion for summary judgment, with competent evidence supporting the facts upon which he would predicate liability, as well as any other facts necessary to support a conclusion that the defendant acted beyond the scope of his employment." Melo v. Hafer, 13 F.3d 736, 747 (3d Cir. 1994).

The Fourth Circuit, however, has laid out a different process for district courts to follow:

> When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment. . . .

> Moreover, the plaintiff's submission must be specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation. If the plaintiff's evidence is sufficient to carry the burden of proof, the defendant federal employee or the Government may come forward with evidence in support of the certification. At this point, the district court may permit (and limit) any needed discovery. Thereafter, the district court must

determine whether there are any genuine issues of fact material to the scope-of-employment decision, and, if so, it may conduct an evidentiary hearing to resolve these factual issues. Once any factual issues are resolved, the district court should weigh the evidence on each side to determine whether the certification should stand. During this process, the district court should remain cognizant of the considerations weighing against protracted litigation under the Westfall Act.

Gutierrez de Martinez v. Drug Enf't Admin., 111 F.3d 1148, 1153, 1155 (4th Cir. 1997). In determining whether to allow additional discovery, district courts should balance "the need for a meaningful review of the scope certification with the need to protect federal employees from burdensome discovery." Id. at 1155 (quoting Schrob v. Catterson, 967 F.2d 929, 936 (3d Cir. 1992)).

A district court in the Southern District of Florida has adopted the Fourth Circuit's approach, holding that "[b]ecause Plaintiffs have failed to introduce or proffer specific evidence to contradict the Certification, the Court will substitute the United States in place of the federal employees." Castellanos v. Pfizer, Inc., 555 F. Supp. 2d 1343, 1346-47 (S.D. Fla. 2008). The court specifically denied plaintiffs further discovery or an evidentiary hearing where they had not met that initial burden. Id. at 1347-48.

The Court adopts the approach taken by the Fourth Circuit

in <u>Gutierrez</u> and its sister court in <u>Castellanos</u>. This approach best serves the purposes of the Westfall Act and furthers the need to adequately protect federal employees from burdensome discovery. <u>Gutierrez</u>, 111 F.3d at 1155; <u>Castellanos</u>, 555 F. Supp. 2d at 1347; <u>see also</u> <u>Lackro v. Kao</u>, 748 F. Supp. 2d 445, 452 (E.D. Penn. 2010) (finding that plaintiff was not entitled to even limited discovery where plaintiff offered only "ambiguous allegations" that failed to rebut the Attorney General's certification).

Accordingly, to rebut the U.S. Attorney's certification, Plaintiffs must submit "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." <u>Gutierrez</u>, 111 F.3d at 1155. This Plaintiffs have not done.

In their response, Plaintiffs submit that the nature and extent of the relationship between the Purple Shovel Defendants and the Federal Defendants is "ripe for discovery." (Doc. # 98 at 8). They argue that "the existence of such a relationship is a first step in establishing that [Federal] Defendants were acting outside the scope of their employment because they were acting on behalf of their private acquaintances, not their employer." (<u>Id.</u>). They also argue

that additional discovery is warranted "regarding whether Defendant Strother's [August 24, 2016] communications were within the scope of her employment. Further, approval of SOCOM contracts is an internal process and it would serve the parties, and the Court, to obtain additional information regarding the exact procedures the Government uses to determine whether and how [Federal] Defendants acted within or outside their scope of employment." (Id. at 11-12).

This is insufficient because Plaintiffs have not proffered a forecast of specific facts that the discovery would show but, rather, only give examples of broad topics they would like to explore in discovery. Cf. Stokes, 327 F.3d at 1216 (limited discovery allowed where plaintiffs' counsel explained that he would seek deposition statements and written memoranda on specific topics related to the scope-of-employment issue). Thus, Plaintiffs are not entitled to limited discovery or an evidentiary hearing on the scope-of-employment issue.

What's more, the Eleventh Circuit has held that discovery and an evidentiary hearing are unnecessary where a plaintiff alleges no facts to support his contention that a federal employee defendant acted outside the scope of employment at the time of the alleged wrongdoing. Glover, 626

F. App'x at 930.  Even taking as true the allegations in the Amended Complaint, Plaintiffs have not convinced the Court that the Federal Defendants were acting outside the scope of their employment under the applicable law – the law of the state in which the incident occurred.  See Lehtinen, 913 F.2d at 1542. Here, the Federal Defendants' acts occurred in the state of Florida.

Under Florida law, an employee acts within the scope of his employment "if his act is of the kind he is employed to perform, it occurs substantially within the time and space limits of employment and it is activated at least in part by a purpose to serve the master." Nadler v. Mann, 951 F.2d 301, 305 (11th Cir. 1992) (quoting Kane Furniture Corp. v. Miranda, 506 So. 2d 1061, 1067 (Fla. 2d DCA 1987)).  "Stated another way, the issue is whether the employee was doing what his employment contemplated."  Id. (internal quotation omitted).

Plaintiffs allege that the Federal Defendants were all civilian contracting officers at SOCOM "charged with issuing and overseeing prime contracts for the purchase and delivery of arms, ammunition, and related goods." (Doc. # 70 at ¶¶ 7-9, 12-14). As such, the Federal Defendants "had the authority to approve SOCOM contracts with prime contractors for the purpose of securing arms and ammunition for use by the U.S.

Government." (Id. at ¶¶ 15-17).

Plaintiffs further allege that the Federal Defendants, "acting as [] civilian contracting officer[s] for SOCOM, issued a partial SOCOM contract with Purple Shovel" for the purchase of 7,500 AK-47 assault rifles on June 7, 2016. (Id. at ¶¶ 51-53). Elmex and Omnipol acted as the subcontractor and supplier on this SOCOM Contract, and the non-payment and alleged fraudulent diversion of the payment on the SOCOM Contract is the foundation of the claims in the Amended Complaint. (Id. at ¶¶ 54-62).

Under the allegations in the Amended Complaint, issuing and approving contracts like the one issued to Purple Shovel is precisely the sort of act the Federal Defendants were employed to perform, and the acts occurred within the time and space limits of employment. Recognizing this, Plaintiffs hang their argument on the third prong and argue that, under the allegations in their Amended Complaint, the Federal Defendants' actions were not undertaken to serve the Government, but rather were done entirely to serve their own personal avarice or were undertaken in contravention of SOCOM policies and procedures. (Doc. # 98 at 8-10).

Plaintiffs ignore that, under Florida law, so long as an act is undertaken at least **in part** to serve the employer, an

employee will be still be acting within the scope of his employment. See Nadler, 951 F.2d at 305; see also Moecker v. Honeywell Int'l, Inc., 144 F. Supp. 2d 1291, 1312 (M.D. Fla. 2001) (explaining that, in context of the theory of *respondeat superior*, "where the tort is committed at least partly to serve the employer or is committed within the scope of his employment the employer can be held liable . . . even if the alleged wrong was a crime, was not authorized by the employer, or was forbidden by the employer" (citations omitted)); Fields v. Devereaux Found., Inc., 244 So. 3d 1193, 1196 (Fla. 2d DCA 2018) (explaining that, under Florida law, "an employer can generally be held vicariously liable for an intentional tort where the employee's conduct is undertaken in furtherance of the employer's interests").

Here, the Federal Defendants' alleged issuance of contracts on behalf of SOCOM generally and the issuance of the June 7, 2016, contract to Purple Shovel specifically were undertaken, at least in part, to serve and benefit their employer, SOCOM. Accordingly, even under the allegations in the Amended Complaint, the Federal Defendants were acting within the scope of their employment with regard to the incidents central to this case. For this reason, the Court may make the substitution determination without resorting to

additional discovery or an evidentiary hearing. See Glover, 626 F. App'x at 930; Pritchett, 891 F. Supp. at 1544 (explaining that a court may rely on the allegations in the complaint, and may enter judgment on the substitution question as a matter of law and without additional fact-finding, when the plaintiff fails to allege any conduct by the employee defendant that could be considered outside the scope of employment under applicable state law).

Having determined that the United States is properly substituted as Defendant for Siedel, Strother, and Bristol, the Court now turns to the United States' argument that sovereign immunity bars all but two of Plaintiffs' claims as to those Defendants.

### 2. Sovereign Immunity under the FTCA

Sovereign immunity shields the United States from suit "absent a consent to be sued that is 'unequivocally expressed'" in statutory text. United States v. Bormes, 568 U.S. 6, 9 (2012); Gomez-Perez v. Potter, 553 U.S. 474, 491 (2008). "A court may only exercise jurisdiction over the Government pursuant to 'a clear statement from the United States waiving sovereign immunity . . . together with a claim falling within the terms of the waiver." Dolan v. U.S. Postal Serv., 546 U.S. 481, 498 (2006).

The Federal Torts Claim Act (FTCA) created a limited waiver of sovereign immunity, making the United States liable "to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." United States v. Orleans, 425 U.S. 807, 813 (1976); see 28 U.S.C. §§ 1346(b)(1) and 2674; see also Phillips v. United States, 260 F.3d 1316, 1318 (11th Cir. 2001) ("It is well established that the FTCA is a specific waiver of the sovereign immunity of the United States and must be strictly construed."). Thus, under the FTCA, the United States may be liable for "injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b)(1), 2674. Under such circumstances, a plaintiff's exclusive remedy is against the United States. Id. § 2679(b)(1).

However, "[t]he FTCA qualifies its waiver of sovereign immunity for certain categories of claims (13 in all). If one of the exceptions applies, the bar of sovereign immunity remains." Dolan, 546 U.S. at 485. Those 13 categories are

set forth in 28 U.S.C. § 2680. <u>Id.</u> The exception pertinent here is the exception for "[a]ny claim arising out of . . . misrepresentation [or] deceit[.]" 28 U.S.C. § 2680(h). In discussing Section 2680(h)'s misrepresentation exception, the Supreme Court stated that "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." <u>Block v. Neal</u>, 460 U.S. 289, 296 (1983).

Courts have held that fraud claims fit squarely under the umbrella of Section 2680(h). <u>See</u> <u>Stratton v. Napolitano</u>, No. 8:11-cv-2651-T-35TGW, 2013 WL 12149371, at *2 (M.D. Fla. June 5, 2013). What's more, other claims, such as unjust enrichment, that are based on a defendant's alleged fraudulent conduct also fall within Section 2680(h)'s ambit because "they clearly arise out of several of the torts listed 28 U.S.C. § 2680(h) — misrepresentation, deceit, or interference with contract rights." <u>See</u> <u>Kimbrell v. Fed.</u> <u>Hous. Fin. Agency</u>, No. 16-cv-1182, 2016 WL 3746419, at *5 (C.D. Ill. July 8, 2016), aff'd, 682 F. App'x 486 (7th Cir. 2017) (finding that plaintiff's claims for intentional infliction of emotional distress and unjust enrichment "are similarly not redressable" under Section 2680(h) "and

therefore are not actionable before this Court").[4]

Here, all of the counts in the Amended Complaint arise out of the alleged fraudulent schemes outlined therein. All Plaintiffs' state-law claims arise from, essentially, the Defendants' coordinated misrepresentations to Plaintiffs, on which Plaintiffs allegedly relied to their detriment. See Block, 460 U.S. at 296.

Plaintiffs argue that the "gravamen" of their claims against the Federal Defendants is not one of fraud, but of racketeering. (Doc. # 98 at 12). Furthermore, Plaintiffs submit, RICO claims do not fall within the exceptions to the waiver of sovereign immunity. (Id. at 12-14).

As an initial matter, the Government does not dispute that the federal RICO claims, Counts V and VI, fall outside of the waiver exception and may be properly asserted against the individual Federal Defendants. (Doc. # 91 at 2, 10 n.8). But more importantly, Plaintiffs bear the burden of demonstrating subject-matter jurisdiction through an applicable waiver of sovereign immunity. James v.

_____

[4] In addition, this Court has held that unjust enrichment is an equitable claim, and the FTCA does not contain a waiver of sovereign immunity for equitable claims. See Wang v. United States, No. 8:05-cv-1924-T-30MSS, 2006 WL 1886124, at *5 (M.D. Fla. July 7, 2006) (dismissing unjust enrichment claim against the United States for lack of jurisdiction).

<u>Jacksonville Bulk Mail Ctr.</u>, No. 3:06-cv-1120-J-34JRK, 2009 WL 2901197, at *3 (M.D. Fla. Sept. 4, 2009). The Court has considered Plaintiffs' argument but is nevertheless persuaded that the "gravamen" of the Amended Complaint, as Plaintiffs put it, is indeed one of fraud, misrepresentation, and deceit, as to all Defendants, thus falling within the exception stated in Section 2680(h).

Here, the exception stated in Section 2680(h) serves to raise the bar of sovereign immunity on Plaintiffs' state-law claims. Thus, this Court is without subject-matter jurisdiction against the United States, as the substituted defendant for the Federal Defendants, as to Counts I through IV and VII, which all attempt to state a claim under Florida law. <u>See</u> <u>Zelaya v. United States</u>, 781 F.3d 1315, 1324 (11th Cir. 2015) ("[A] state tort cause of action is a *sine qua non* of FTCA jurisdiction[.]"); <u>see</u> <u>also</u> <u>Kerns v. United States</u>, 585 F.3d 187, 194 (4th Cir. 2009) (explaining that the "law of the place" referenced in Section 1346(b)(1) refers to state law only). The federal RICO counts, however, remain against those Defendants. <u>See</u> 28 U.S.C. § 2679(b)(2)(B) (stating that the exclusive remedy against the United States does not apply to "a violation of a statute of the United States under which such action against an individual is otherwise authorized").

### 3.    Exhaustion of Administrative Remedies

Even if Plaintiffs' claims are not barred by an applicable exception to the waiver of sovereign immunity, this Court lacks subject-matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies.

Under the FTCA, "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). A court lacks subject-matter jurisdiction over a federal lawsuit when the plaintiffs have failed to exhaust their administrative remedies under the FTCA. See Cheves v. Dep't of Veterans Affairs, 227 F. Supp. 2d 1237, 1241 (M.D. Fla. 2002).

Here, Plaintiffs have not alleged that they exhausted their administrative remedies, and, thus, the Court is without subject-matter jurisdiction over those claims governed by the FTCA.

**B.** <u>**Failure to State a Claim**</u>

The Court now turns to the sufficiency of Plaintiffs' claims in the Amended Complaint. Although the Court has dismissed all but Counts V and VI against the Federal Defendants for lack of subject-matter jurisdiction, the Court will, as a matter of thoroughness, address the sufficiency of the allegations as to all claims against all Defendants.

**1.    Common Law Fraud**

Count One asserts a claim for common law fraud against all Defendants. (Doc. # 70 at 17-19). Plaintiffs allege that Benjamin Worrell, Christopher Worrell, and Brech "made false statements" to Plaintiffs that Purple Shovel would pay the amount due under the SOCOM Contract, even though the Worrells and Brech "knew that they would not make such payment when the funds from SOCOM arrived." (<u>Id.</u> at ¶¶ 64-65). Plaintiffs allege that the Purple Shovel Defendants intended that Plaintiffs would rely on their misrepresentations and enter into the Cooperation Agreement, based on the incorporated "promise that a wire transfer would be made within 10 days of receipt of the subject funds from SOCOM." (<u>Id.</u> at ¶ 66). According to Plaintiffs, they "procured, manufactured, and delivered the required material at great cost" in reliance on those misrepresentations. (<u>Id.</u> at ¶ 67).

31

Under Florida law, the elements of fraud are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010). Under Rule 9(b), claims of fraud must be pled with particularity, which means proffering the who, what, when, where, and how of the fraud alleged. Fed. R. Civ. P. 9(b); Mizarro, 544 F.3d at 1237.

Plaintiffs argue that the Amended Complaint should be viewed under a relaxed Rule 9(b) standard because the documents they need to plead with greater specificity are in the Defendants' possession and control. (Doc. ## 87 at 13-14; Doc. # 95 at 13-14; Doc. # 98 at 18).

It is true that Rule 9(b)'s heightened pleading standard may be applied less stringently when specific factual information about the fraud is peculiarly within the defendant's knowledge or control. Hill v. Morehouse Med. Assocs., No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. 2003). But even in those circumstances, plaintiffs must still accompany their legal theories with factual allegations that make the theoretically viable claim plausible. Id. For

example, in Hill, the plaintiff had insider knowledge through her employment at the defendant company of the company's billing practices and the manner in which the fraudulent billing schemes occurred. Id. at *4. The plaintiff in Hill had personally observed other employees alter billing codes and submit false claims. Id. Thus, her firsthand knowledge of the alleged fraudulent submissions lent her complaint the required "indicia of reliability." Id. at *4-5.

However, although Rule 9(b)'s pleading standard may be relaxed when evidence of the fraud is exclusively within the defendant's possession, conclusory allegations do not justify relaxation. Id. at *4; United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1314 n.25 (11th Cir. 2002). In Clausen, a non-employee plaintiff alleged that the defendant company had engaged in multiple fraudulent schemes that led it to submit false claims for payment to the Government, in violation of the False Claims Act. Id. at 1303. Instead of pleading with specificity facts regarding how and when any actual improper claims were submitted to the Government, the plaintiff alleged in conclusory fashion that bills were submitted to the Government as a result of the defendant's schemes. Id. at 1312. The Eleventh Circuit was sympathetic to the difficult situation the plaintiff faced in

obtaining facts for his legal theory, recognizing that, "[a]s a corporate outsider, he may have had to work hard to learn the details of the alleged schemes entered into by [the defendant] . . . while not being privy to [the defendant's] policy manuals, files, and computer systems." Id. at 1314. Nonetheless, the difficulty plaintiff faced was not sufficient to justify relaxing Rule 9(b)'s pleading standard because "conclusory allegations are insufficient to justify relaxation." Id. at 1314, 1314 n.25. The instant situation is similar to that in Clausen – outsider Plaintiffs claim that they are unable to access the documents they need to properly plead their case. And like the plaintiff in Clausen, Plaintiffs here are offering only conclusory allegations without the necessary "indicia of reliability" that would make their claims plausible. Under these circumstances, the Court may not relax Rule 9(b)'s heightened pleading standard.

Plaintiffs similarly argue that they need not give the who, what, when, where and why specifics for each claim, but rather may "plead some of the information for some of the claims," citing to United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1359 (11th Cir. 2006). (Doc. # 87 at 12; Doc. # 95 at 10; Doc. # 98 at 16). McInteer, however, is inapposite and does not stand for the proposition Plaintiffs claim. The

<u>McInteer</u> court was explaining that, to meet Rule 9(b)'s particularity requirement in False Claims Act cases, there must be sufficient indicia of reliability given in the complaint to support the allegation of an **actual false claim** submitted to the Government for payment. 470 F.3d at 1357. Citing to a line from the <u>Clausen</u> decision, the <u>McInteer</u> court pointed out that, to meet this threshold, certain information should be included in the complaint with regard to specific claims for payment, such as the amounts of charges, actual dates, or billing practices or policies. <u>Id.</u> at 1358 (citing <u>Clausen</u>, 290 F.3d at 1312). The court held that although Rule 9(b) does not require that all of this information be pled for every allegedly fraudulent claim submitted to the Government, some of that information for at least some of the claims must be stated. <u>Id.</u> (citing <u>Clausen</u>, 290 F.3d at 1312 n.21). In short, Plaintiffs here are conflating the term "claim," meaning a claim for payment submitted to the Government in a False Claims Act action, with a "claim," meaning a count within a complaint.

With the correct pleading standard in mind, the Court will examine Plaintiffs' fraud allegations in the Amended Complaint.

As to the Purple Shovel Defendants, the Amended

Complaint generally alleges that the Worrells and Brech "made false statements" to Omnipol and Elmex. (Doc. # 70 at ¶ 64). Yet the only statements, save one, identified in the Amended Complaint were made by non-party Benjamin Worrell, not Christopher Worrell or Brech. See Id. at ¶¶ 54, 56, 59-61). Tellingly, the Amended Complaint alleges that Benjamin Worrell, alone, was the person who (1) agreed to pay Plaintiffs the almost $3 million due to Purple Shovel under the SOCOM contract; (2) verified that the subcontract was pursuant to a SOCOM contract; and (3) signed the Cooperation Agreement. (Id. at ¶¶ 59-61).

The Amended Complaint does allege one statement made by Christopher Worrell to Plaintiffs – a document entitled "Descriptions and Specifications/Statement of Work" that Worrell allegedly signed and emailed to Plaintiffs on May 3, 2017, and "contained a false representation that Plaintiff would be paid all but $11,000 of the contract price prior to delivery and acceptance of the weapons." (Id. at ¶ 93(c)). It is worth noting that this allegation is contained only in the RICO substantive claim, not the fraud claim. But, in any event, it is insufficient to state a claim under Rule 9(b). The Amended Complaint does not allege that Christopher Worrell knew the statement was false when made, nor does it

state which Plaintiff relied on the statement, or how Plaintiffs relied on that statement at all, considering that Plaintiffs and Purple Shovel entered into the Cooperation Agreement the very next month, which was the document governing the payment to Plaintiffs. And the Amended Complaint contains no allegations of **any** specific statement made by Brech to Plaintiffs.

Plaintiffs imply that any statements made by non-party Benjamin Worrell should be imputed to Christopher Worrell and Brech, see (Id. at ¶¶ 64-67), but this is not sufficient to meet the strictures of Rule 9(b). In cases involving multiple defendants, a complaint alleging fraud must "reasonably notify the defendants of their purported role in the scheme" and "inform each defendant of the nature of his alleged participation in the fraud." Brooks, 116 F.3d at 1381.

As for the Federal Defendants, the claim is easily dismissed. The Amended Complaint contains only two allegations of specific statements made by Strother and Siedel and those allegations again are found in the substantive RICO allegations, not the allegations pertaining to the fraud claim. (Doc. # 70 at ¶ 93(d), (h)). As for Siedel and his alleged statement that payment was delayed on SOCOM's end, Plaintiffs do not allege that this statement was untrue,

and it is unclear how this alleged misstatement harmed Plaintiffs, given that the statement was made on September 1, 2017, more than a month after SOCOM accepted delivery of the AK-47 rifles. See Butler, 44 So. 3d at 105. As for Strother and her August 24, 2016, statement, Plaintiffs have not pled or demonstrated that her alleged false statement that weapons could not be sourced through the Czech Republic was material or how Plaintiffs relied on it to their detriment, considering that Strother made this statement to "prime contractors," like Purple Shovel, and Purple Shovel entered into the Cooperation Agreement with Plaintiffs the following year.

In short, Plaintiffs have failed to state a claim for fraud against any Defendant.

### 2. Civil Theft

Count Two asserts a claim for civil theft against all Defendants. (Doc. # 70 at 19-20). Plaintiffs allege that the Purple Shovel Defendants transferred the funds paid by SOCOM to "unnamed co-conspirators, knowing said funds were due to Plaintiffs." (Id. at ¶ 71). According to Plaintiffs, Defendants then received and disbursed the funds "to all Defendants for their personal use," intending to deprive Plaintiffs of their right to those funds and to appropriate those funds for their own use. (Id. at ¶¶ 72-73).

Under Florida law, a plaintiff is entitled to treble damages if he proves by clear and convincing evidence that he has been injured by the defendant's violation of Section 812.014, Florida Statutes – the criminal theft statute. Fla. Stat. § 772.11(1). Thus, to state a claim for civil theft, the plaintiff must allege an injury resulting from a violation of the criminal theft statute. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1270 (11th Cir. 2009). To do this, the plaintiff must allege the defendant: (1) knowingly (2) obtained or used, or endeavored to obtain or use, the plaintiff's property with (3) "felonious intent" (4) either temporarily or permanently to (a) deprive the plaintiff of the right or benefit of the property, or (b) appropriate the property to the defendant's own use or the use of another. See Id.

Here, because Plaintiffs' civil theft and unjust enrichment claims arise from and sound in fraud, the Court may scrutinize these claims under Rule 9(b)'s standard. See Pelfrey v. Mahaffy, No. 17-cv-80920-MIDDLEBROOKS/Brannon, 2018 WL 3110794, at *4 (S.D. Fla. Feb. 2, 2018) (explaining that a claim may sound in fraud when a plaintiff alleges a "unified course of fraudulent conduct" and relies entirely on that course of conduct as the basis of that claim).

The bare-bones allegations in the Amended Complaint fail to state a claim for civil theft against all Defendants under either Rule 12(b)(6) or Rule 9(b). The first element in a civil theft claim is that a defendant must take the plaintiff's property "knowingly." See Mazer, 556 F.3d at 1270. Yet the Amended Complaint's allegations of knowledge and intent are conclusory and speculative. For example, the only allegations of Christopher Worrell's and Brech's knowledge is that they knew Plaintiffs would spend "millions" delivering the weapons due under the contract, they "knew that they would not make [the expected] payment when the funds from SOCOM arrived," and instead transferred the funds to unnamed co-conspirators "knowing said funds were due to Plaintiffs." (Doc. # 70 at ¶¶ 62, 65, 71). As for the Federal Defendants, Plaintiffs merely allege that they knew Purple Shovel was executing an unlawful scheme of defrauding subcontractors. (Id. at ¶¶ 7-9, 47-50).

Despite alleging that Christopher Worrell and Brech had knowledge of the scheme to defraud Plaintiffs, almost all of the communications alleged came from Benjamin Worrell, not Christopher Worrell or Brech. Additionally, the Amended Complaint generally alleges that the Purple Shovel Defendants transferred the funds to "unnamed co-conspirators," (Id. at

¶ 71), yet this allegation is too imprecise to inform each Defendant of his alleged role in the scheme. See Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1317 (11th Cir. 2007) ("[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

The allegations of the Federal Defendants' knowledge are even less precise – merely alleging in conclusory fashion that they knew Purple Shovel was "executing an unlawful scheme." This not only fails to meet the stringent pleading standards of Rule 9(b), it fails to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

What's more, Plaintiffs have also not identified any money received by Defendants that belong to Plaintiffs. The Amended Complaint alleges that Purple Shovel promised to pay Elmex, pursuant to the Cooperation Agreement, within 10 days of Purple Shovel receiving payment from SOCOM. (Doc. # 70 at ¶¶ 56, 61). Plaintiffs allege that SOCOM accepted delivery of the arms on July 20, 2017, and that Elmex invoiced Purple Shovel on July 27, 2017. (Id. at ¶¶ 57-58). Plaintiffs even allege that on September 1, 2017, Siedel sent an email representing that SOCOM's payment was delayed for technical

reasons. (Id. at ¶ 93(d)).  But a key fact underlying the entire Amended Complaint – SOCOM's payment to Purple Shovel – is buried within the Amended Complaint and alleged in a conclusory fashion. See (Id. at ¶ 77) ("As a result [of Plaintiffs delivering the arms to SOCOM], SOCOM transferred millions of dollars to Benjamin Worrell and Defendants Christopher Worrell and James Brech, through Purple Shovel."). Notwithstanding the imprecise nature of this key allegation, Plaintiffs then plead in a conclusory fashion that those alleged funds were then transferred to unidentified co-conspirators at an unknown time in an unknown way, and that those unnamed co-conspirators then, at an unknown time and in an unknown way, transferred the funds to all Defendants. This is insufficient.  Plaintiffs have failed to state a claim for civil theft against any of the Defendants.

### 3.  Unjust Enrichment

Count Three asserts a claim for unjust enrichment against all Defendants. (Doc. # 70 at 20-21). Plaintiffs allege that while they performed under the contract by delivering the supplies to SOCOM, Defendants were unjustly enriched by Plaintiffs' performance via the fraudulent transfer of the funds first to unnamed co-conspirators and

42

then to the Defendants themselves. (Id. at ¶¶ 77-79).

Under Florida law, the elements of a claim for unjust enrichment are "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1337 (11th Cir. 2012). "As to the first element, the plaintiff must show it 'directly conferred' a benefit on the defendant." Harvey v. Fla. Health Scis. Ctr., Inc., 728 F. App'x 937, 946 (11th Cir. 2018). Accordingly, "[i]t is not enough to show that the defendant obtained a benefit and that the plaintiff was in some roundabout way damaged." Caldwell v. Compass Entm't Grp. LLC, No. 6:14-cv-1701-Orl-41TBS, 2016 WL 7136181, at *2 (M.D. Fla. Feb. 4, 2016). Nonetheless, "the 'direct benefit' element of an unjust enrichment claim may be satisfied where a benefit is conferred through an intermediary. In other words, a direct benefit can derive from a transaction with no direct *contact*." Weinberg v. Advanced Data Processing, Inc., 147 F. Supp. 3d 1359, 1368 (S.D. Fla. 2015).

The allegations in the Amended Complaint are nearly identical to the ones the Court found lacking in Plaintiffs'

original Complaint. As the Court explained at the July 12, 2019, hearing, even if it could be convinced that the Amended Complaint sufficiently alleges a payment from SOCOM to Purple Shovel, and that this payment directly benefited Worrell and Brech as owners or executive officers of Purple Shovel, the Amended Complaint still lacks sufficient detail. Namely, the Court warned Plaintiffs that an amended pleading would need to identify when SOCOM transferred the funds to Purple Shovel, when Purple Shovel transferred the funds to unnamed co-conspirators, and when the unnamed co-conspirators transferred the funds to the Defendants. (Doc. # 79 at 46-47). Despite counsel responding that they would re-plead with "those exact dates," the Amended Complaint still lacks those key details. See (Id. at 47).

The unjust enrichment claim suffers from the same deficiencies with respect to the Federal Defendants but faces the additional hurdle of showing that Plaintiffs conferred a "direct benefit" on the Federal Defendants. While the "direct benefit" element of an unjust enrichment claim may be satisfied by showing a benefit conferred through an intermediary, the multiple payment structure alleged here is too attenuated to support a claim. See Caldwell, 2016 WL 7136181, at *3 (holding allegations of third party's improper

transfer of assets owned by plaintiff to defendants did not establish a direct benefit); <u>Tambourine Comerico Int'l S.A. v. Solowsky</u>, No. 06-20682-Civ., 2007 WL 689466, at *8 (S.D. Fla. Mar. 4, 2007) (holding allegations of third party's fraudulent transfer of money owned by plaintiff to defendant did not establish a direct benefit). At best, such allegations indicate Omnipol and Elmex conferred an indirect benefit on the Federal Defendants. <u>See Johnson v. Catamaran Health Sols., LLC</u>, 687 F. App'x 825, 830 (11th Cir. 2017) (affirming dismissal of unjust enrichment claim because complaint alleged merely an indirect benefit). Plaintiffs have failed to state a claim for unjust enrichment against the Defendants.

### 4. Racketeering

Counts Four and Five bring claims for federal and state substantive racketeering violations against all Defendants. (Doc. # 70 at 22-28). Florida's racketeering statute is patterned after the federal RICO law, so the analysis is the same for both. <u>Jackson</u>, 372 F.3d at 1263-64. The elements of a RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." <u>Williams v. Mohawk Indus., Inc.</u>, 465 F.3d 1277, 1282 (11th Cir. 2006), abrogated on other grounds as recognized by <u>Simpson v. Sanderson Farms, Inc.</u>, 744 F.3d 702 (11th Cir. 2014).

Plaintiffs' racketeering claims fail on two fronts. First, Plaintiffs have failed to allege the existence of an enterprise. Second, Plaintiffs have failed to allege a pattern of racketeering activity.

An enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). However, "merely alleging that the 'Defendants conspired with each other and with others . . .' does not allege an enterprise." <u>Palm Beach Cty. Envtl. Coal. v. Florida</u>, 651 F. Supp. 2d 1328, 1349 (S.D. Fla. 2009). Instead, "the existence of an enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." <u>Mohawk Indus.</u>, 465 F.3d at 1284. "[T]he definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes." <u>Id.</u>

Here, Plaintiffs allege that Purple Shovel was the "vehicle" used by Defendants to commit their allegedly fraudulent schemes and that "all Defendants" were associated with Purple Shovel. (Doc. # 70 at 2, 3, ¶¶ 7-9, 43, 90-91).

The Amended Complaint alleges that, prior to the formation of Purple Shovel, the Federal Defendants each knew Benjamin and Christopher Worrell and they "associated [together] in public and private." (Id. at ¶¶ 22-27). The Amended Complaint also includes the throwaway line that "all Defendants are employed by and/or associated with Purple Shovel" and "all Defendants participated in the conduct of Purple Shovel's affairs through a pattern of racketeering activity." (Id. at ¶¶ 90-91); see also (Id. at ¶ 99 ("Defendants have all intentionally conspired and agreed to directly and indirectly participate in the conduct of Purple Shovel's affairs through a pattern of racketeering activity.")). This purported description of the alleged enterprise is overly vague – it does not show that the Defendants functioned as a "continuing unit," nor does it allow the Court to evaluate whether the alleged enterprise meets the legal standard necessary to establish a RICO enterprise. See Mohawk Indus., 465 F.3d at 1284; Palm Beach Cty., 651 F. Supp. 2d at 1349.

Next, to establish a pattern of racketeering activity, "a plaintiff must allege that a defendant committed at least two predicate racketeering acts that demonstrate criminal conduct of a continuing nature." Lawrie v. Ginn Dev. Co., LLC, 656 F. App'x 464, 467 (11th Cir. 2016). "[I]n order to

survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." Republic of Panama v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 949 (11th Cir. 1997).

The Amended Complaint sets forth four sets of alleged predicate acts: (1) mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343; (2) violations of the National Stolen Property Act, in violations of 18 U.S.C. § 2314; (3) money laundering, in violation of 18 U.S.C. § 1956; and (4) theft of the money from the government, in violation of 18 U.S.C. § 641. (Doc. # 70 at 22-26).

As a preliminary matter, only offenses set forth in 18 U.S.C. § 1961 constitute racketeering activities. See 18 U.S.C. § 1961. Violations of Section 641 for theft of money from the government is not listed in Section 1961. See Id. Thus, there are only three properly alleged predicate acts in the Amended Complaint.

Racketeering activity includes mail and wire fraud. 18 U.S.C. § 1961(1); Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010). "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires

in furtherance of that scheme." <u>Am. Dental Ass'n</u>, 605 F.3d at 1290. The first element, a scheme or artifice to defraud, "requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." <u>United States v. Bradley</u>, 644 F.3d 1213, 1238 (11th Cir. 2011). "A misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision maker to whom it is addressed." <u>Id.</u> at 1239. When a RICO claim is premised on predicate acts of mail or wire fraud, the complaint must satisfy the heightened pleading standard of Rule 9(b). <u>Am. Dental Ass'n</u>, 605 F.3d at 1291. That means the plaintiff must allege facts with respect to each defendant's participation in the fraud. <u>Id.</u>

The Amended Complaint sets out five instances of communications that, Plaintiffs allege, violated the wire fraud statutes. (Doc. # 70 at ¶ 93(a)-(d), (h)). First, Plaintiffs allege that they were deceived by fraudulent misrepresentations contained in a letter that was emailed "from Defendants to Plaintiff Elmex on May 3, 2017" representing that Plaintiffs would be paid under the SOCOM Contract. (<u>Id.</u> at ¶ 93(a)). Second, Plaintiffs claim they were deceived by fraudulent misrepresentations that they

49

would be paid under the SOCOM Contract contained in the June 26, 2017, Cooperation Agreement between Purple Shovel and Plaintiffs "which was emailed from Defendants to Plaintiffs." (Id. at ¶ 93(b)). Third, the substantive RICO count alleges that Christopher Worrell violated the wire-fraud statutes when he emailed a document entitled "Descriptions and Specifications/Statement of Work" to Plaintiffs on May 3, 2017, that "contained a false representation that Plaintiff would be paid all but $11,000 of the contract price prior to delivery and acceptance of the weapons." (Id. at ¶ 93(c)). Fourth, the Amended Complaint alleges that on September 1, 2017, Siedel sent an email stating that SOCOM's payment under the contract was delayed for technical reasons. (Id. at ¶ 93(d)). Plaintiffs claim that they were misled by this representation because the email was "intended to reassure Plaintiffs that they would eventually receive payment, and was sent with the specific intent of deceiving Plaintiffs and dissuading them from communicating with SOCOM." (Id.). Finally, Plaintiffs claim that on August 24, 2016, Strother issued a "false and misleading communication . . . advising SOCOM prime contractors falsely that weapons supplied through the [SOCOM Contract with Purple Shovel] could not be sourced through the Czech Republic as that country was blacklisted."

(Id. at ¶ 93(h)).  Plaintiffs claim that this statement "was made with an intent to protect and further Defendants' scheme to defraud Plaintiffs." (Id.).

None of these allegations, taken together or alone, are sufficient to allege wire fraud on the part of Defendants. See Republic of Panama, 119 F.3d at 949 (explaining that, to state a claim for RICO violations, plaintiffs must allege facts sufficient to support the statutory elements of the pleaded predicate acts).

As an initial matter, Plaintiffs' allegations that all Defendants contacted Plaintiffs on May 3, 2017, and June 26, 2017, is belied by their earlier allegations that non-party Benjamin Worrell, alone, notified Elmex on May 3, 2017, that it was hired as subcontractor on the SOCOM Contract and that Benjamin Worrell, alone, signed the Cooperation Agreement on behalf of Purple Shovel and emailed the Cooperation Agreement to Plaintiffs. (Doc. # 70 at ¶¶ 54, 56, 59, 61).  And Plaintiffs' loose and conclusory allegations of all Defendants being involved in a scheme to "dupe" subcontractors is insufficient under Rule 9(b) to put each Defendant on notice of their role in the scheme and fails to meet Rule 9(b)'s particularity requirements.  See Am. Dental Ass'n, 605 F.3d at 1291.

The Court now turns to whether the Amended Complaint sufficiently alleges wire fraud against each of the Defendants under Rule 9(b). As to Worrell, the Amended Complaint contains only a single statement allegedly made by him in furtherance of the scheme: the May 3, 2017, "Descriptions and Specifications/Statement of Work. (Doc. # 70 at ¶ 93(c)). This lone allegation falls far short of alleging that Worrell "knowingly devised or participated in a scheme to defraud plaintiffs" and "did so willingly with an intent to defraud," as needed to show mail or wire fraud. See Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1312 (11th Cir. 2000). Nor can Plaintiffs plausibly allege that they relied on this "misrepresentation" regarding the terms of payment when, one month later, they signed the Cooperation Agreement with Purple Shovel, which stipulated that Elmex would be paid 10 days after Purple Shovel was paid under the contract. (Doc. # 70 at ¶¶ 56, 61). Even looking at the Amended Complaint holistically, the Amended Complaint is not specific enough regarding Worrell's involvement in the so-called scheme because Worrell gets lumped together with Benjamin Worrell and Brech in nearly all of the allegations. The deficiencies of the Amended Complaint make it too difficult for the Court to determine what Worrell actually

did vis-à-vis the fraudulent scheme under the facts alleged.

As to Brech, there are no allegations in the Amended Complaint whatsoever regarding any statements or actions taken by Brech alone.

As to Federal Defendant Siedel, the Amended Complaint contains a single statement made by him: the September 1, 2017, statement that payment to Purple Shovel was delayed. (Doc. # 70 at ¶ 93(d)). Again, this single alleged statement does not show that Siedel "knowingly devised or participated in a scheme to defraud plaintiffs" and "did so willingly with an intent to defraud." See Langford, 231 F.3d at 1312. Plaintiffs also do not explain how they relied on this communication to their detriment – by September 1, 2017, the arms had already been delivered to SOCOM and, allegedly, Plaintiffs were already out almost $3 million. (Doc. # 70 at ¶ 57). While Plaintiffs suggest that this communication dissuaded them from communicating directly with SOCOM, there is no allegation in the Amended Complaint that Plaintiffs ever communicated with SOCOM or were ever stopped from communicating with SOCOM, even after they realized Defendants' purported scheme. Without more, Plaintiffs have not adequately alleged the elements of wire fraud as a predicate act as to Siedel. See Republic of Panama, 119 F.3d

at 949.

As to Federal Defendant Strother, the Amended Complaint again contains one specific statement made by her: the August 24, 2016, communication that supplies could not be sourced through the Czech Republic. (Doc. # 70 at ¶ 93(h)). Assuming that this statement was false, Plaintiffs have not shown how this alleged misstatement was material – that it had the natural tendency to influence the decision maker to whom it was addressed. See Bradley, 644 F.3d at 1238–39. The statement was made to "prime contractors" like Purple Shovel, not Plaintiffs. See (Doc. # 70 at ¶ 93(h)). And it is unclear how it would have influenced Purple Shovel or Plaintiffs, considering that those entities entered into a Cooperation Agreement the next year. What's more, it is entirely unclear how this statement – assuming it ever made its way to Plaintiffs' ears – induced Plaintiffs to enter into the Cooperation Agreement with Purple Shovel. See Bradley, 644 F.3d at 1238–39.

Finally, the Amended Complaint contains not a single allegation of a statement or action undertaken by Federal Defendant Bristol alone, which is insufficient to state a claim for wire fraud under Rule 9(b).

Having found Plaintiffs' allegations of one predicate

act – wire fraud – lacking, the Court now turns to the other two predicate acts alleged in the Amended Complaint, the transportation of stolen property under 18 U.S.C. § 2314 and money laundering under 18 U.S.C. § 1956.

Section 2314 outlaws, among other things, the transportation or transmission of stolen money, including such transportation or transmission in connection with a scheme to defraud or obtaining of property under false pretenses. 18 U.S.C. § 2314. A critical element of a Section 2314 violation is proof of scienter, namely, that the defendant knew that property was converted or taken by fraud at the time of the transport. Republic of Panama, 119 F.3d at 949. Similarly, a claim for money laundering under RICO requires allegations that a person conducted a financial transaction with money he knew to be the proceeds of unlawful activity, with the intent to promote the carrying on of specified unlawful activity. United States v. Flynt, 15 F.3d 1002, 1007 (11th Cir. 1994). While allegations of Section 2314 and money laundering violations normally need not satisfy the heightened particularity standard in Rule 9(b), they may be held to that standard when the nonfraud claims require proof of the same misrepresentation underlying a fraud claim alleged elsewhere in the complaint. See

_Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta_, 530 F.3d 1339, 1355–56 (11th Cir. 2008); _Sec. & Exch. Comm'n v. Bankatlantic Bancorp, Inc._, No. 12-60082-CIV, 2012 WL 12837291, at *3 (S.D. Fla. Dec. 7, 2012).

Here, the Section 2314 and money laundering allegations are tied to the overall fraudulent scheme allegedly perpetrated by Defendants, and the Court may view those allegations under Rule 9(b). _See_ (Doc. # 70 at ¶ 93(e)) (alleging violations of Section 2314 based on the alleged transfer of SOCOM payment from Purple Shovel to unnamed co-conspirators and then to Defendants individually); (_Id._ at ¶ 93(f)) (alleging money laundering violations by "distributing money lawfully owed to Plaintiffs under the SOCOM contract"). For the reasons previously explained in this Order, the Plaintiffs' bald accusations that Defendants diverted the payment from SOCOM for their own benefit do not meet the particularity requirements of Rule 9(b).

But even under the more lenient standards of Rule 12(b)(6) and Rule 8, the Amended Complaint fails to allege how Defendants knew about the illicit transmission of these funds, when the funds were transferred, or in what form. This is insufficient to state a claim for either violation. _See Twombly_, 550 U.S. at 557 ("Naked assertions devoid of further

factual enhancement will not suffice.").

Accordingly, because Plaintiffs have failed to adequately allege two or more predicate acts, they have failed to show a pattern of racketeering activity, as necessary for their substantive racketeering claims to survive a motion to dismiss. See Lawrie, 656 F. App'x at 467; Republic of Panama, 119 F.3d at 949. Counts Four and Five are due to be dismissed against all Defendants.

### 5.   RICO Conspiracy

The pertinent provisions of the federal RICO law can be violated when defendants "conspire to violate any of" the substantive provisions of the RICO laws. 18 U.S.C. § 1962(d). While a defendant may be liable for RICO conspiracy even if it is not liable for the substantive RICO offense, plaintiffs must allege an illegal agreement to violate a substantive provision of the RICO statute. Jackson, 372 F.3d at 1269.

The Amended Complaint fails to allege even a single conversation or communication among the Defendants showing an illicit agreement to violate the law. Rather, the Amended Complaint alleges conclusorily that "Defendants have all intentionally conspired and agreed to directly and indirectly participate in the conduct of Purple Shovel's affairs . . . and agreed to the commission of those [racketeering] acts to

further the scheme described above." (Doc. # 70 at ¶ 99). This is insufficient to state a claim for a RICO conspiracy. See Harris v. Jan, No. 2:18-CV-383-Ftm-29MRM, 2018 WL 4898831, at *4 (M.D. Fla. Oct. 9, 2018) (granting motion to dismiss RICO conspiracy claims where plaintiff made only conclusory statements with no factual support).

### 6. Attorney's Fees

Count Seven is a standalone claim for attorney's fees under Sections 772.11 and 772.104, Florida Statutes. (Doc. # 70 at 28-29). Attorney's fees is a remedy, not an independent cause of action. See Avant Garde Eng'g & Res. Ltd. v. Nationwide Equip. Co., Inc., No. 3:11-cv-525-J-20TEM, 2012 WL 12902720, at *5 (M.D. Fla. May 15, 2012) ("In Florida there is no separate claim for attorney's fees . . . . Plaintiff may seek attorney's fees, but not by way of a separate count in the Complaint."). Thus, Count Seven does not state a claim and is due to be dismissed. See Johnson v. Redstone Fed. Credit Union, No. 5:14-cv-02378-SGC, 2017 WL 4707465, at *14 (N.D. Ala. Jan. 17, 2017) (dismissing separate count for attorney's fees because it failed to state a claim).

### C. Leave to Amend

"[A] district court must grant a plaintiff at least one opportunity to amend their claims before dismissing them if

'it appears a more carefully drafted complaint might state a claim upon which relief can be granted[.]'" Silva v. Bieluch, 351 F.3d 1045, 1048-49 (11th Cir. 2003). "Dismissal with prejudice may still be appropriate, however, if granting leave to amend would be futile." Hilderbrandt v. Butts, 550 F. App'x 697, 699 (11th Cir. 2013). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." Id.

While the Court typically follows a liberal amendment policy, it believes that amendment would be futile in this case for two reasons. First, as to Counts I through IV and VII, although it will dismiss those claims as to the Federal Defendants without prejudice because the Court lacks subject-matter jurisdiction over those claims,[5] there is no logical way that Plaintiffs could amend their claims to overcome this hurdle, given the bars of sovereign immunity and administrative exhaustion raised by the FTCA.

Second, at the July 12, 2019, hearing on the original motions to dismiss, the Court explicitly explained what it

---

[5] "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." Stalley ex rel. United States v. Orlando Reg. Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008).

found lacking in Plaintiffs' original Complaint and even gave Plaintiffs specific dates it must include in the Amended Complaint to survive a motion to dismiss. Despite promising the Court that it would amend the complaint "with those exact dates" and would fix the overall deficiencies the Court pointed out, Plaintiffs filed an Amended Complaint that is nearly identical to the original Complaint. See Friedlander v. Nims, 755 F.2d 810, 813-14 (11th Cir. 1985), abrogated on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541 (11th Cir. 2002) (en banc) (concluding that although dismissal of a case for failure to comply with pleading rules is a "severe sanction," its imposition was justified in light of plaintiff's decision to ignore court's "sound and proper" recommendations about how to correct pleading deficiencies). Under these circumstances, the Court does not believe that a second opportunity to amend would yield a complaint that could pass muster under the Rules or survive a third round of motions to dismiss.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The Motions to Dismiss the Amended Complaint filed by Defendants Christopher Worrell, James Brech, and the United States on behalf of Defendants Bryan Siedel, Amy

Strother, and Kirk Bristol (Doc. ## 76, 86, 91) are **GRANTED** for the reasons provided in this Order.

(2) Counts I through IV and VII of Plaintiffs' Amended Complaint are dismissed without prejudice and without leave to amend as to the United States, as the substituted defendant for Defendants Siedel, Strother, and Bristol, for lack of subject-matter jurisdiction. Counts V and VI of the Amended Complaint are dismissed as to Defendants Siedel, Strother, and Bristol with prejudice and without leave to amend. The Amended Complaint is dismissed in its entirety with prejudice and without leave to amend as to Defendants Worrell and Brech.

(3) The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 16th day of October, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE