IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**OMNIPOL, a.S.,** *et al.*,

      **Plaintiffs,**

-vs-                                      **Case No.:** 8:19-cv-00794-VMC-TGW

**CHRISTOPHER WORRELL,** *et al.*

      **Defendants.**

_____/

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT CHRISTOPHER WORRELL'S MOTION FOR ATTORNEY'S FEES AND COSTS**

Defendant, CHRISTOPHER WORRELL (hereinafter "Defendant" or "Worrell"), by and through undersigned counsel, and pursuant to the Court's Order directing a reply to Plaintiffs' opposition memorandum concerning fees (Doc. 116), hereby files the following Reply Memorandum in Support of Christopher Worrell's Motion for Attorney's Fees and Costs.

**INTRODUCTION**

Because the Court directed a reply to Plaintiffs' opposition memorandum (Doc. 113) with a statement that "[a]ny challenge raised in the opposition memorandum that is not addressed int the reply will be deemed forfeited," Worrell has addressed the arguments contained in the Plaintiffs' opposition memorandum in the order they were presented. As for Plaintiffs' introduction section, Plaintiffs once again contain to assert they intend to hold

1

Worrell and Brech "accountable"—for what is not certain. As explained in multiple orders by this Court, the Plaintiffs have failed to adequately state any claim against Worrell. Defendant Worrell is not trying to "punish" Plaintiffs and their counsel for bringing claims in good faith as asserted in Plaintiffs opposition memorandum—rather, he is trying to recover attorney's fees he necessarily incurred responding to a vexatious and baseless strike suit against him, which he is entitled to do against the Plaintiffs and their counsel for reasons set forth below.

**I.  The Dismissal of Plaintiffs' Claims Operates as a Finding that Plaintiffs' Civil Theft and State RICO Claims Lacked Substantial Factual or Legal Support.**

When a defendant demonstrates that a Florida civil theft claim or a Florida RICO claim lacked substantial factual or legal support, that defendant is "*entitled* to recover reasonable attorneys' fees and court costs" as mandatory relief. Fla. Stat. § 772.11(1); Fla. Stat. § 895.05(7) (*emphasis added*). When a claim is dismissed for failure to state a claim based on a motion to dismiss, such a finding is a determination that the claim lacked factual or legal support—otherwise, the claim would have survived the pleading stage. *See e.g. Skubal v. Cooley*, 650 So. 2d 169, 170 (Fla. 4th DCA 1995) (citing a number of Florida cases addressing this fee standard in the context of dismissal). Plaintiffs' Memorandum has completed ignored Worrell's citation to *Skubal*, instead citing the unpublished case of *Millenium Indus. Network Inc. v. Hitti*, No. 11-62570-CIV, 2014 U.S. Dist. LEXIS 68320, at *5 (S.D. Fla. May 12, 2014). The *Hitti* case is plainly distinguishable because the civil theft claim in that matter was dismissed for lack of personal jurisdiction, which by the court's reasoning was not a determination on the merits of the civil theft claim relevant to factual or legal support—in that

2

regard, *Hitti* actually supports Worrell's entitlement to fees. *Id.*

Plaintiffs further argue that "Fed. R. Civ. P. 11 case law is informative" on this issue. (Doc. 113). It simply is not. The entitlement to fees under the Florida civil theft and RICO statutes is spelled out in plain English in those statutes—prevailing Defendant fees are mandatory if the claim lacks substantial legal or factual support. As Florida's Fourth District Court of Appeal held in *Skubal*, "[t]he standard for determining entitlement to attorney's fees under section 772.11 is less stringent than the bad faith standard of section 57.105"—which is analogous to Rule 11—and does not require "a finding of a complete absence of a justiciable issue of either law or fact," only that the "claim was without substantial fact or legal support." 650 So. 2d at 170 (citing *Foreman v. E.F. Hutton & Co.*, 568 So. 2d 531 (Fla. 3d DCA 1990) and *Ciarmello v. D'Ambra*, 613 So. 2d 1324, 1325 (Fla. 2d DCA 1990)). The Court's order dismissing the civil theft and RICO claim for failure to state a claim "did just that"—i.e., determined that such claims were without substantial fact or legal support. *Id.* Plaintiffs' attempts in their Memorandum to impute a Rule 11 standard here are a red herring to distract the Court from the well-established Florida law on this issue which is set forth in *Skubal* and its cited authorities. Plaintiffs' willful ignorance of—and distraction from—these holdings in their Memorandum evinces a broader pattern of disregard for the truth of facts and applicability of law in this matter which is relevant to the determination of sanctions under § 1927 as set forth below in this Memorandum.

**II.     Worrell Did Not Waive a Claim to Fees by Failing to Assert It in a Responsive Pleading**

Plaintiffs ask this Court to employ a truly absurd construction regarding fees: that Worrell should not be permitted to recover fees because Plaintiffs' claim was so devoid of factual and legal support that it was dismissed before a responsive pleading was required that would contain a prayer for fees. In support of this position, Plaintiffs cite *Stockman v. Downs*, 573 So. 2d 835 (Fla. 1991) and equate the term "responsive pleading" with "Motion to Dismiss." (Doc. 113 at p. 5). But a "motion to dismiss [is] not a responsive pleading." *Boca Burger, Inc. v. Forum*, 912 So. 2d 561, 565 (Fla. 2005). The Florida Supreme Court explicitly distinguished *Stockton* in this situation in *Green v. Sun Harbor Homeowners' Ass'n* as follows:

> [T]he failure to set forth a claim for attorney fees in a motion does not constitute a waiver. Until a rule is approved for cases that are dismissed before the filing of an answer, we require that a defendant's claim for **attorney fees is to be made either in the defendant's motion to dismiss or by a separate motion which must be filed within thirty days following a dismissal of the action.** If the claim is not made within this time period, the claim is waived.

730 So. 2d 1261, 1263 (Fla. 1998). Worrell has filed a compliant fee request by filing the Motion for fees within the time prescribed following dismissal for the action. No conduct of Worrell or his counsel indicates waiver regarding recovery of fees and costs.

Worrell's Motion is hardly the first time notice of intent to seek fees was given. Worrell's Rule 26(a)(1)(A)(iii) disclosure provided to Plaintiffs' counsel on August 9, 2019 explicitly states that "Defendant Christopher Worrell reserves his right to seek reasonable attorney's fees against the Plaintiffs in this matter based on computation of his attorneys' reasonable hourly rate(s) multiplied by the number of hours incurred." *See* attached Worrell's

Rule 26 Disclosures (Aug. 9, 2019). The Florida Supreme Court has made clear—ironically, in *Stockman*—that "[w]here a party has notice that an opponent claims entitlement to attorney's fees, and by its conduct recognizes or acquiesces to that claim or otherwise fails to object to the failure to plead entitlement, that party waives any objection to the failure to plead a claim for attorney's fees." 573 So. 2d at 838. Worrell has complied with and exceeded all notice requirements concerning the intent to seek fees in this matter—he has engaged in no conduct whatsoever supporting a waiver. Plaintiffs argument concerning waiver is meritless.

### III.   Plaintiffs' and their Counsel's Conduct Warrant § 1927 Sanctions

It is true that cases within the Middle District of Florida, including those cited in Plaintiffs' Motion, have held that § 1927 applies only to unnecessary filings after a suit commenced and generally does not apply to initial pleadings. *See e.g. Corwin v. Walt Disney World Co.*, No. 6:02-cv-1377-Orl-19KRS, 2008 U.S. Dist. LEXIS 112545, at *61 (M.D. Fla. Feb. 15, 2008). However, as expressed in Worrell's Motion for fees, the instant action is distinguishable because it is, fundamentally, a vexatious multiplication of the pre-existing bankruptcy proceedings against Worrell's employer, Purple Shovel. Plaintiffs, before instituting this action, had a preexisting claim in Purple Shovel's bankruptcy for almost the exact same relief concerning the defaulted contract they seek here in this action. Instead of relegating themselves in good faith to the creditor claim against the business entity, Plaintiffs and their counsel concocted a facially implausible and outrageous conspiracy theory against unrelated individuals and companies for fraud in order to spin out the bankruptcy claim into an ancillary

5

proceeding. Then, in an attempt to deprive the defendants in this action of due process, Plaintiffs proceeded to conduct virtually all of their discovery relevant to this action in the bankruptcy case without providing notice to the defending parties in this action, which has been subject of separate sanctions proceedings in the bankruptcy court. This entire case is essentially a creditor claim against Purple Shovel that was vexatiously multiplied into an separate fraud action against third parties with no factual or legal support, and in that regard Plaintiffs literally multiplied the proceedings in a vexatious manner—i.e., "without sufficient grounds for the purpose of causing trouble or annoyance to the defendant." *United States v. Aisenberg*, 247 F. Supp. 2d 1272, 1307 n.12 (M.D. Fla. 2003) (citing Oxford English Dictionary, Vol. XII, 167 (1970)).

Interestingly, Plaintiffs and their counsel appear to offer no argument defending their decision to maintain the suit against Worrell in the amended pleading, which by definition is not an initial pleading. At a bare minimum, Worrell is entitled to sanctions for Plaintiffs' maintenance of the suit after it was dismissed the first time. As discussed in the Court's Order on the second round of Motions to Dismiss, Plaintiffs failed to live up to promises their counsel made at the hearing dismissing the initial Complaint concerning pleading of facts necessary to support a claim against Worrell. Instead of simply dropping Worrell as it did with three other Defendants, Plaintiffs filed an Amended Complaint containing allegations that were "nearly identical to the ones the Court found lacking in Plaintiffs' original Complaint." Doc. 106 at 43-44. Worrell contends that § 1927 does not have a blanket exception for initial pleadings,

6

especially in circumstances such as this where the initial pleading in the action is an outlandish theorization of a claim that has already been asserted in a separate case for the same acts and occurrences. However, even if this Court disagrees and holds that § 1927 does not apply to the initial pleading, it should apply to every paper concerning Worrell after the initial pleading was dismissed. *See Laosebikan v. Coca-Cola Co.*, 415 F. App'x 211, 215 (11th Cir. 2011) (admonishing repeated assertions "of baseless allegations of fraud and criminal conduct against" defendant by "vexatious" litigant).

IV. **Worrell's Fee Request Is Reasonable**

A. **Defendant Worrell's Attorney's Hourly Rate Is Reasonable**

Plaintiffs sole argument against the reasonableness of a $350 hourly rate is to take shots at the length of time Plaintiff's counsel has been practicing as a fifth-year attorney. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Although the length of time practicing may be a factor, it is not an inflexible yardstick by which skill, experience, and reputation is measured—that would lead to absurd situations where comparatively unskilled attorneys with deservedly lousy reputations but long tenures automatically command higher rates than more highly skilled and experienced but younger counterparts. "A newly admitted lawyer can be as competent as a practitioner with long experience." Fla. Bar Reg. R. 4-1.1.

7

Worrell's attorney's hourly rate was supported rather extensively with an affidavit and citations to awarded rates associated with the lead attorneys on similar cases. Worrell's attorney's skill and experience more closely coincides with that of attorneys who were in the lead counsel role of the cases cited, not the attorneys who were junior associates at a large firm performing limited functions under the supervision of others. Had Worrell's attorney instead been a lawyer for a banking institution like those in some of the cases cited or a business such as that of the Plaintiffs, a lower rate may be warranted. But as the Eleventh Circuit has stated,

> [I]t is not unusual for a law firm representing a governmental entity on an ongoing basis to charge substantially lower hourly rates than would be charged for representation in a single case. Where the facts show this, the fee charged by [**18] a government attorney is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer.
> The court recognizes that few practitioners who regularly defend the poor and disadvantaged have the opportunity to bill and collect on an hourly basis. Accordingly, it may be virtually impossible to establish a prevailing market rate for such services. Therefore, fee counsel in such cases must seek out close cohorts to provide a measure. Major civil rights class action matters might be akin to plaintiff's class actions in antitrust and securities matters; cohorts might be found in suits brought by professional, business or neighborhood associations against government entities. **Single plaintiff civil rights cases, of course, find analogies in employment discrimination cases and in other disputes where the representation is not the product of an ongoing relationship between the attorney and the client.**

*Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (**emphasis added**). In this particular matter, representation of Worrell is more akin to representing

8

individual employees in civil rights or other disputes as set forth above. It is unlike the situation large bank employs a firm for a volume of billable work. Worrell carries on his business as an employee with no reasonable expectation that he would be subjected to the risk of such a fanciful and baseless lawsuit, and he does not have the resources of a large party. He did not have a pre-established relationship with undersigned counsel prior to this case. Accordingly, Worrell's attorney made use of his specialized skill, experience, and reputation for representing employees in employment and business litigation as set forth in the affidavit supporting the Motion. The undersigned's skill and ability is apparently on par with that of attorneys who have been practicing nearly three times as long, as evidenced by the fact that Joshua S.M. Smith, Esq.—an attorney at a large firm who has been admitted to the Florida Bar since January 2005—filed a nearly identical reproduction of Worrell's Motion to Dismiss in defense of his own client, Mr. Brech, without the undersigned's consent or approval. In any event, the Plaintiffs and their counsel have placed far too much emphasis on the number of years as a proxy for skills, experience, and reputation, and have provided no other argument as to why the requested rate is unreasonable. The hourly rate of $350 is reasonable and should be approved.

**B. The Hours Set Forth in the Affidavit Should Not Be Reduced**

Worrell addresses the point raised by Plaintiffs in approximately the same bullet-point format presented in Plaintiffs' Memorandum as follows:

- Time incurred regarding the bankruptcy proceeding: As stated in this Reply and the

9

Motion it supports, the bankruptcy proceeding was part-and-parcel with this proceeding—this matter was a vexatious multiplication of the bankruptcy creditor claim. For example, Plaintiffs' conduct necessitated that Worrell's counsel monitor the bankruptcy matter and communicate with trustees because Plaintiffs sought all their discovery concerning Worrell through that proceeding without providing the required notice to Worrell or the other Defendants.

- The entries concerning Strothers' discovery were necessary because Worrell and his counsel wished to serve interrogatories concerning the factual basis for the allegations against Worrell since Plaintiffs had yet to produce a pleading identifying the information required by Fed. R. Civ. P. 9(b)—Worrell needed to know this information for the scheduled mediation to be meaningful. Worrell's counsel was aware that Strothers' counsel had served very similar interrogatories, and in light of Plaintiffs' bad-faith conduct in the case, Worrell's Counsel wanted to observe how to anticipate objections raised to those interrogatories. Indeed, Plaintiffs' responses to Strothers' interrogatories were indefensibly obstructive and nonresponsive, and Worrell's counsel will gladly provide these to the Court upon request as evidence of Plaintiffs' bad faith and lack of factual or legal support. Worrell's counsel used this information in formulating the Worrell's own interrogatories and creating clear expectation with opposing counsel concerning the obligation to respond completely. The responses to these interrogatories were due

10

...

before the scheduled mediation but after the dismissal of claims. All the interrogatories and discovery involved common issues of confidentiality which are described in the time entries, which included conference and discussions with counsel for the parties concerning the scope of the proposed confidentiality stipulation necessary under applicable SOCOM regulations.

- Time entries concerning insurance coverage for Worrell were also reasonably necessary in defending Worrell in this action. Worrell has been sued by Plaintiffs for doing nothing more than his job at Purple Shovel, to which he was assigned through Team One Logistics. Worrell's counsel had a duty to Worrell in connection with this litigation to pursue available coverage, especially after it became known to Worrell's counsel that Team One's carrier had previously agreed to cover Worrell in a separate matter involving Purple Shovel.

- As to the Motion to Dismiss billing, the fact that Brech and Worrell filed nearly identical Motions was not of Worrell's attorney's choosing. Brech's counsel effectively plagiarized Worrell's attorney's work product without Worrell's or his attorney's consent. The attorneys did not work together or pool time on a "duplicated-and-revised" Motion as Plaintiffs conclude. The Motion to Dismiss the Amended Complaint took more time to draft than the Motion to Dismiss the Initial Complaint because of the great effort required in unpacking Plaintiffs' extremely convoluted pleading and cross referencing it with an extensive collection of

documents and other information that Worrell's counsel collected for anticipated discovery but did not have available earlier in the case when the first Motion was prepared. Counsel for Worrell also spent additional time on research and revising the second Motion to Dismiss because it became apparent that the Amended Complaint's continued survival would soon saddled with the cost of immense discovery involving multiple parties as well as the pressure to settle baseless claims at the scheduled mediation.

WHEREFORE, Plaintiff respectfully requests that the Court award reasonable attorney fees of $21,539 against Plaintiffs (1) OMNIPOL a.S., (2) ELMEX PRAHA, a.S., and their Counsel, (3) NDH LLC d/b/a NEXUS DERECHOS HUMANOS, (4) MARIO WILLIAMS; (5) DALLAS LEPIERRE, and (6) MARIA-VITTORIA CARMINATI jointly and severally.

Dated: December 20, 2019                              RESPECTFULLY SUBMITTED,

By: /s/ Brian Calciano
Brian Calciano, Esquire
Fla. Bar No. 0108879
BRIAN CALCIANO, PA.
146 2nd St. N., Ste. 310-DD
St. Petersburg, FL 33701
Tel: 727-202-4516
Email: brian@flemploymentlaw.com
Attorney for Defendant Christopher Worrell

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served via the CM/ECF portal to all

counsel of record this <u>20th</u> day of December 2019.

<u>By: /s/ Brian Calciano</u>
Brian Calciano, Esquire

13

Case 8:19-cv-00794-VMC-TGW   Document 118   Filed 12/20/19   Page 13 of 13 PageID 1378