UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OMNIPOL, A.S., *et al.*,

    Plaintiffs,

v.                             CASE NO. 8:19-cv-794-T-33TGW

CHRISTOPHER WORRELL, *et al.*,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

       Defendants James Brech and Christopher Worrell prevailed in this lawsuit which alleged, among other claims, civil theft and violations of racketeering laws in connection with their employer's failure to pay the plaintiffs nearly $3 million owed on a contract. The defendants filed motions to recover from the plaintiffs their attorneys' fees and costs incurred in defending against the civil theft and Florida RICO claims. Additionally, Christopher Worrell seeks sanctions against plaintiffs' counsel under 28 U.S.C. 1927. The motions were referred to me.

       The court's Order dismissing the amended complaint establishes that it found the civil theft and Florida RICO claims were without substantial fact or legal support. Therefore, the defendants are entitled to

recover their attorneys' fees incurred for those claims.   Furthermore, Christopher Worrell established that plaintiffs' counsel unreasonably and vexatiously multiplied these proceedings so that he is entitled to recover his attorney's fees from plaintiffs' counsel for the period following dismissal of the original complaint.   Accordingly, I recommend that the Motions for Attorneys' Fees and Costs (Docs. 107, 109) be granted as to entitlement for those claims.

## I.

The facts of this case are set forth in the court's Order dismissing the amended complaint and, therefore, they do not need to be repeated in detail here.   A brief summary of the plaintiffs' allegations follows.

The plaintiffs allege that defendants Christopher Worrell and James Brech were employees of, and formed, with non-party Benjamin Worrell, the "Purple Shovel" company. It had been licensed in the United States to engage in international arms transactions.   On June 7, 2016, the U.S. Special Operations Command (SOCOM) issued a contract to Purple Shovel for the purchase of ammunition, including 7,500 AK-47 assault rifles (the SOCOM contract).   Pursuant to that contract, SOCOM would pay Purple Shovel $2,984,250.

2

Plaintiffs Elmex and Omnipol are limited liability companies formed in the Czech Republic. On May 3, 2017, "Benjamin Worrell, as CEO of Purple Shovel, notified [plaintiff Elmex] ... by email that they were hired as the subcontractor" on the SOCOM contract (Doc. 70, ¶54). Elmex, in turn, selected Omnipol as the weapons supplier on the contract.

On June 26, 2017, Benjamin Worrell sent the plaintiffs a "Cooperation Agreement" which provided that Purple Shovel would pay Elmex via wire transfer within 10 days of Purple Shovel receiving payment from SOCOM. The plaintiffs alleged that Benjamin Worrell, as CEO of Purple Shovel, "agreed by mail, email, and telephone, to pay Plaintiffs the $2,984,250 provided to Purple Shovel from SOCOM" (id., ¶59).

On July 20, 2017, SOCOM accepted delivery of the weapons. Thereafter, Elmex invoiced Purple Shovel for $2,984,250, the total amount due under the Cooperation Agreement. However, according to the plaintiffs, once SOCOM paid Purple Shovel for the weapons, the defendants diverted the subcontract proceeds to an unnamed co-conspirator, who then disbursed the funds among the defendants.

Purple Shovel and its principal, Benjamin Worrell, have declared bankruptcy. The plaintiffs filed claims against them in the bankruptcy court, which remain pending.

3

The plaintiffs filed this lawsuit against Christopher Worrell, James Brech and others, asserting claims of fraud, civil theft, unjust enrichment, and violations of Florida and federal racketeering laws. Worrell moved to dismiss the original complaint for failure to meet minimum pleading requirements (see Doc. 12). James Brech had not been served at that time.

On July 12, 2019, the court conducted oral argument on the motions to dismiss (see Doc 79). It told plaintiffs' counsel that, regarding "[f]raud, you're not even close to stating a cause of action" (id., p. 44). It explained further that,

> [u]nder RICO, fraudulent predicate acts must meet 9(b)'s heightened pleading threshold. ... [T]he Complaint is not specific enough regarding [Christopher] Worrell's involvement in the scheme. Counts Four and Five for RICO violations lump Christopher Worrell with Benjamin Worrell, Para, and Brech. It's too difficult to determine what Mr. Worrell actually did based on the facts alleged, and not enough specificity is provided regarding the time, place and manner of the allegedly fraudulent scheme.

(id., pp. 47–48).

Furthermore, the court stated that the civil theft claim was deficient because

> the allegations with respect to [Christopher] Worrell's conduct and knowledge are conclusory.

4

> Really what they are talking about is the communications coming from Benjamin Worrell, not Christopher Worrell, when I look at this.

(id., p. 33).

> The court, moreover, told plaintiffs' counsel that
>
> [the complaint] fails to specify when SOCOM transferred the funds to Purple Shovel, when Purple Shovel transferred the funds to Multinational Defense Services or when Multinational Defense Services transferred the funds to all the remaining defendants, including Mr. [Christopher] Worrell.

(id., pp. 46–47). Plaintiffs' counsel stated that he was "happy to replead with those exact dates" (id., p. 47) and "happy to replead" other deficient claims (id., p. 42).

Accordingly, the court dismissed the complaint without prejudice, explaining that it "fails to comply with Federal Rule of Civil Procedure 9(b) and fails to state a claim under Federal Rule of Civil Procedure 12(b)(6)" (Doc. 59). However, based on plaintiffs' counsel's representations that he would replead with specificity, the court permitted the plaintiffs until July 26, 2019, to file an amended complaint (see id.).

On July 26, 2019, the plaintiffs filed an amended complaint which repeated the same claims against Christopher Worrell and James Brech (Doc. 70). On August 2, 2019, Brech was served with the amended

5

complaint (see Doc. 73).

Thereafter, Brech and Worrell filed motions to dismiss the amended complaint, arguing that the plaintiffs failed to remedy the defects of the original complaint (Docs. 76, 86).  The plaintiffs responded that the amended complaint "satisf[ied] Rule 9(b)" (Doc. 87, p. 14).  On the other hand, the plaintiffs requested the court to apply Rule 9(b)'s heightened pleading standard leniently because "much of the information needed is within the sole control of Defendants and not Plaintiffs" (id., pp. 12–13).

The court, in a comprehensive 61-page Order, granted the defendants' motions and dismissed the amended complaint against them with prejudice (Doc. 106) ("Dismissal Order").  It held that none of the claims is cognizable, and it "does not believe that a second opportunity to amend would yield a complaint that could pass muster under the Rules" (id., p. 60).

Thus, the court held in the Dismissal Order that "[t]he bare bones allegations in the Amended Complaint fail to state a claim for civil theft ... under either Rule 12(b)(6) or Rule 9(b)" (id., p. 40).  It stated that "the allegations of knowledge and intent were conclusory and speculative" (id.), and noted that, although the lawsuit is based upon allegedly "false statements" to the plaintiffs, "the only statements, save one ... were made

6

by non-party Benjamin Worrell, not Christopher Worrell or Brech" (id., p. 36).[1]

Furthermore, the court held that "the Plaintiffs' bald accusations that Defendants diverted the payment from SOCOM for their own benefit" did not meet Rule 8 pleading requirements (id., p. 56). It explained (id., p. 44):

> The Court warned Plaintiffs that an amended pleading would need to identify when SOCOM transferred the funds to Purple Shovel, when Purple Shovel transferred the funds to unnamed co-conspirators, and when the unnamed co-conspirators transferred the funds to the Defendants. (Doc. # 79 at 46-47).

Moreover, the court held that the plaintiffs' "loose and conclusory allegations of all Defendants being involved in a scheme to 'dupe' subcontractors is insufficient" to state a RICO violation (id., p. 51) and that "[t]he Amended Complaint fails to allege even a single conversation or communication among the Defendants showing an illicit agreement to violate the law" (id., p. 57).

Finally, the court rejected the plaintiffs' request to apply a more

---

[1]The plaintiffs allege that C. Worrell falsely stated Elmex would be paid all but $11,000 of the contract price prior to delivery and acceptance of the weapons. The court found that the plaintiffs could not "plausibly allege that they relied on this 'misrepresentation'" (Doc. 106, p. 52) and explained, in detail, its deficiencies (id., pp. 36-37).

7

lenient pleading standard, stating that the plaintiffs did not identify an exception applicable to the general rule that fraud claims be pled with specificity (id., pp. 32–35). In this regard, the plaintiffs cited to False Claims Act qui tam cases wherein relators were permitted to plead "some of the information for ... some of the [false] claims" (Doc. 95, p. 12). The court explained why those cases were inapplicable (see Doc. 106, pp. 32–35). It added that the plaintiffs, in all events, "must still accompany their legal theories with factual allegations that make the theoretically viable claim plausible" (id., p. 32), which it found the plaintiffs did not do (id., pp. 34, 41).

> The court stated, in conclusion, that it had
>
>> explicitly explained what it found lacking in Plaintiffs' original Complaint and even gave Plaintiffs specific dates it must include in the Amended Complaint to survive a motion to dismiss. Despite promising the Court that it would amend the complaint 'with those exact dates' and would fix the overall deficiencies the Court pointed out, Plaintiffs filed an Amended Complaint that is nearly identical to the original Complaint.

(id., pp. 59–60). Therefore, the court dismissed the amended complaint "in its entirety with prejudice and without leave to amend as to Defendants Worrell and Brech" (id., p. 61).

The plaintiff appealed this Order (Doc. 114). The appeal is pending before the Eleventh Circuit Court of Appeals.

In the meantime, Brech and Worrell filed motions for attorneys' fees and costs under Florida's civil theft statute, §772.11, and Florida's RICO statute, §772.104, which provide that a prevailing defendant is entitled to recover his attorney's fees upon a finding that the plaintiff raised a claim that was "without substantial fact or legal support" (Docs. 107, 109). Worrell also moves for his attorney's fees against plaintiffs' counsel pursuant to 28 U.S.C. 1927 (Doc. 109, pp. 8–12). The parties clarified at the hearing that they presently seek a ruling only on their entitlement to attorneys' fees.

The plaintiffs oppose an award of attorney's fees on several grounds, including that the defendants allegedly waived this right because they did not plead attorney's fees in their motions to dismiss, and that recovery under either statute "is not allowed without a finding of frivolity" (Doc. 113, pp. 1–2).

The motions were referred to me for a report and recommendation (Doc. 110). The defendants, in accordance with the court's Order, filed reply memoranda (Docs. 116, 117, 118). I subsequently held oral argument on the motions.

II.

It is appropriate to address first the plaintiffs' argument that the defendants "waived their ability to recover attorney's fees by waiting until after dismissal to seek them" (Doc. 113, p. 5).   The plaintiffs argue that, because "[n]either ... [defendant] requested attorney's fees in their Motions to Dismiss ... under Florida law, a request for attorney's fees is waived" (id.).  This argument is meritless.

The plaintiffs rely upon Coffey v. Evans Properties, Inc., 585 So. 2d 960, 962 (Fla. App. 1991), which stated, in dicta, that attorney's fees were not available to a defendant who prevailed on a motion to dismiss because the defendant failed to "previously plead any right to section 772.104 fees before moving for fees, and when it did file the motion it failed to cite this or any other statute."  The ruling was based upon the Florida Supreme Court's holding in Stockman v. Downs that "a claim for attorney's fees, whether based on statute or contract, must be pled" to give the opposing party sufficient notice of the claim.  573 So.2d 835, 837 (Fla. 1991).

The Florida Supreme Court clarified Stockman in Green v. Sun Harbor Homeowners' Ass'n, Inc., 730 So. 2d 1261, 1262 (Fla. 1998).  It explained:

> Holding that a claim for attorney fees had to be
> filed in the defendant's motion to dismiss before

10

the defendant was required to answer the complaint is an inaccurate reading of the "must be pled" language in <u>Stockman</u>. Because the defendant had not "pled" at the time the action was dismissed, the defendant's failure to file a claim for attorney fees in his motion to dismiss is not considered to be a waiver of his entitlement to attorney fees.

The Florida Supreme Court concluded (<u>id</u>., p. 1263):

<u>Stockman</u> is to be read to hold that the failure to set forth a claim for attorney fees in a complaint, answer, or counterclaim, if filed, constitutes a waiver. However, the failure to set forth a claim for attorney fees in a motion does not constitute a waiver.

Worrell therefore argues that, based on <u>Sun Harbor</u>, he did not waive his claim for attorney's fees because there was no responsive pleading in this case (<u>see</u> Doc. 118, p. 4).

The plaintiffs argue that <u>Sun Harbor</u> is distinguishable because the Florida Supreme Court defined pleading in accordance with the <u>Florida Rules of Civil Procedure</u>. This contention is illogical because the Federal Rules of Civil Procedure also defines a responsive pleading as an answer to the complaint. <u>See</u> Rule 12(a)(1)(A), F.R.Civ.P.; <u>see also</u> Rule 12(b), F.R. Civ. P.

Additionally, at oral argument the plaintiffs presented the case of <u>In re Full Gospel Assembly of Delray Beach</u>, No. 05-23067-BKC-JKO,

11

2007 WL 2082975 (S.D. Fla.). That bankruptcy case is inapposite and non-binding.

Moreover, Worrell points out that his motion for fees was not the first time "notice of intent to seek fees was given" (Doc. 118, p. 4). He points out that his Rule 26 disclosure included a "reserv[ation of] his right to seek reasonable attorney's fees against the Plaintiffs in this matter" (id., p. 4). Notably, that possibility did not dissuade the plaintiffs from prosecuting this case. See Stockman v. Downs, supra, 573 So. 2d at 837 (notice of an attorney's fee claim "may often be determinative in a decision on whether to pursue a claim, dismiss it, or settle"). Therefore, the plaintiffs' waiver argument is properly rejected.

III.

The defendants seek recovery of attorney's fees under Florida's Civil Theft Statute, § 772.11, which provides that "[t]he defendant is entitled to recover reasonable attorney's fees and court costs … upon a finding that the claimant raised a [civil theft] claim that was without substantial fact or legal support."

"The legislature's clear intent in this wording was to discourage claims lacking either legal or factual substance by setting a less stringent standard for a fee award than the bad faith standard of section 57.105," which

12

imposes sanctions for frivolous claims. Opus Group, LLC v. Int'l Gourmet Corp., No. 11-23803-CIV; 2013 WL 12383485 at *3 (S.D. Fla.) (citation omitted). Thus, "it is not necessary that the court find a 'complete absence of a justiciable issue of either law or fact' in order to award attorney's fees under the civil theft statute." Id. (internal citation omitted).

Furthermore, courts have found that dismissal of the claims with prejudice acts as a finding that the claims were without substantial fact or legal support. See Moore Business Forms, Inc. v. Iberoamerican Electronics, S.R.L., 698 So.2d 611, 613 (Fla. App. 1997) ("It was plaintiff's failure to allege a claim of civil theft sufficient to withstand defendant's motion to dismiss that entitled defendant to be awarded its attorney's fees."); Foreman v. E.F. Hutton & Co., Inc., 568 So.2d 531 (Fla. App. 1990); but see Standafer v. Schaller, 726 So. 2d 352, 353 (Fla. App. 1999) (The civil theft "statute appears to require more than that the defendant be the prevailing party because the failure of a plaintiff to prevail on a civil theft claim by clear and convincing evidence does not necessarily mean that the claim was without substantial legal support.")

In all events, it is clear from the Dismissal Order that the court found the plaintiffs' civil theft claims were "without substantial fact or legal support" and, therefore, the defendants are entitled to an award of attorney's

13

fees under Fla. Stat. 772.11.

The elements for a civil theft claim are that the defendants: (1) "knowingly obtained or used, or endeavored to obtain or to use," the plaintiffs' property (2) with the "felonious intent" to "appropriate the property to [their] own use or to the use of any person not entitled to the use of the property." Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1327 (11th Cir. 2006) (internal citations omitted). Worrell argues that the plaintiffs did not come close to sufficiently pleading either element of this claim (Doc. 109, p. 2). Brech contends that the civil theft claim alleged against him was without any factual or legal support (Doc. 107, p. 4).

The plaintiffs alleged that the defendants falsely stated that they would pay the plaintiffs and then intentionally "transferred the funds paid by SOCOM to unnamed co-conspirators," who then disbursed the funds "to all defendants for their personal use" (Doc. 106, p. 38). The court found that "[t]he bare bones allegations in the Amended Complaint fail to state a claim for civil theft ... under either Rule 12(b)(6) or Rule 9(b)" (id., p. 40).

Specifically, the court found that the plaintiffs' allegations of criminal knowledge and intent were "conclusory and speculative" (id.). It noted that "almost all of the communications alleged came from [non-party] Benjamin Worrell, not Christopher Worrell or Brech" (id., p. 40) and that

14

"the Amended Complaint contains no allegations of **any** specific statement made by Brech to Plaintiffs" (id., p. 37) (emphasis in original). The court added: "Tellingly, the Amended Complaint alleges that Benjamin Worrell, alone, was the person who ... agreed to pay Plaintiffs the almost $3 million due to Purple Shovel under the SOCOM contract ... and signed the Cooperation Agreement" (id., p. 36).

The plaintiffs' inability to state sufficiently specific allegations of felonious intent shows that the claims lacked a substantial basis. See Almeida v. Amazon.com, Inc., supra, 456 F.3d at 1328 (failure to show felonious intent to misappropriate the plaintiff's property shows that the civil theft claim lacks substantial basis in fact).

Furthermore, the court emphasized that the "Plaintiffs have also not identified any money received by Defendants that belong to Plaintiffs" (Doc. 106, p. 41). The court stated (id., p. 42):

> [The] Plaintiffs ... plead in a conclusory fashion that ... [millions of dollars] were transferred to unidentified co-conspirators at an unknown time in an unknown way, and that those unnamed co-conspirators then, at an unknown time and in an unknown way, transferred the funds to all Defendants. This is insufficient. Plaintiffs have failed to state a claim for civil theft against any of the Defendants.

15

Moreover, the court recounted in the Dismissal Order that it had advised the plaintiffs during oral argument that

> an amended pleading would need to identify when SOCOM transferred the funds to Purple Shovel, when Purple Shovel transferred the funds to unnamed co-conspirators, and when the unnamed co-conspirators transferred the funds to the Defendants.

(id., p. 44). The defendants contend, reasonably, that the plaintiffs' inability to remedy these deficiencies underscores that the civil theft claims against them were not cognizable.

In sum, the court found that the plaintiffs' claims of civil theft against the defendants were bereft of specific factual allegations supporting either element of a civil theft claim. Therefore, it is implicit in the Dismissal Order that the civil theft claims were "without substantial fact or legal support." See Fla. Stat. 772.11.

The plaintiffs argue that the court did not find that their civil theft claims lacked substantial support because "[i]n its treatment of Plaintiffs' civil theft claim, the Court merely found that the allegations ... were not sufficient to satisfy ... [Rule] 9[(b)]—a heightened pleading requirement" (Doc. 113, p. 2). That contention is erroneous. The court stated that the plaintiffs' "bare bones allegations in the Amended Complaint fail to state a claim for civil theft ... under either Rule 12(b)(6) or Rule 9(b)"

16

(Doc. 106, p. 40) (emphasis added; <u>see</u> <u>also</u> <u>id.</u>, p. 56 (the claim fails "even under the more lenient standards of Rule 12 (b)(6) and Rule 8")).

The plaintiffs argue further that the defendants "ask the Court to convert every Fed. R. Civ. P. 12(b)(6) dismissal into a finding of lack of factual or legal support, which is not the case" (Doc. 113, p. 3). This contention is frivolous (<u>see</u> <u>supra</u>, pp. 14-16). Additionally, the plaintiffs contend that "[t]he court did not find that Plaintiffs' claims lacked 'substantial factual or legal support'" (Doc. 113, p. 2). As best as can be discerned, the plaintiffs are arguing that the court did not expressly state that finding. However, it is implicit within the Dismissal Order, which suffices for an award of attorney's fees. See <u>Opus Group, LLC</u> v. <u>Int'l Gourmet Corp.</u>, <u>supra</u>, 2013 WL 12383485 at *4. In all events, the court can include an express finding in the record.

Finally, the plaintiffs argue that the motions should be evaluated under the Rule 11 standard for frivolous claims because arguably "Fed. R. Civ. P. 11 punitive measures are analogous to Fla. Stat[] §772.11" (<u>see</u> Doc. 113, p. 3). This contention is baseless, as the standard for awarding attorney's fees under §772.11 is less stringent than Rule 11.

Thus, sanctions imposed under Rule 11 are analogous to those awarded under Fla. Stat. 57.105, <u>Collier County</u> v. <u>Holiday CVS, L.L.C.</u>,

17

No. 2:17-cv-14, 2017 WL 1378548, at *1 (M.D. Fla.), and the civil theft statute "set[s] a less stringent standard for a fee award than the bad faith standard of section 57.105." Opus Group, LLC v. Int'l Gourmet Corp., supra, 2013 WL 12383485 at *3; see, e.g., Bronson v. Bronson, 685 So.2d 994, 995 (Fla. App. 1997) (erroneous to apply § Fla. Stat. 57.105's frivolous standard in determining entitlement to fees under the civil theft statute because the standard for awarding attorney's fees under the civil theft statute is broader).

In sum, the defendants' contention is meritorious that the plaintiffs' civil theft claims lacked a substantial fact or legal basis. Accordingly, they are entitled to an award of their attorney's fees incurred in defending against those claims. See Fla. Stat. § 772.11.

IV.

Additionally, the defendants seek reimbursement for attorney's fees related to the plaintiffs' allegations of racketeering and fraud in violation of the Florida RICO Act. Recovery of attorney's fees under this statute is provided for in the Florida Civil Remedies for Criminal Practices Act, which states that a defendant "shall be entitled to recover reasonable attorney's fees and costs ... upon a finding that the claimant raised a claim which was without substantial fact or legal support." Fla. Stat. § 772.104(3).

18

The Eleventh Circuit discussed in <u>Johnson Enterprises of Jacksonville, Inc.</u> v. <u>FPL Group, Inc.</u>, 162 F.3d 1290 (11th Cir. 1998) the standard for an award of attorney's fees under this statute. Similar to the standard for an attorney's fee award under the civil theft statute, which contains the same language, it stated:

> The Florida courts have explained that in awarding fees to a defendant under chapter 772.104, "it is not necessary that the court find a complete absence of a justiciable issue of either law [or] fact. The trial court must only find that the claim lacked substantial fact or legal support." This standard is less stringent than the standard for awarding attorneys' fees under other Florida statutory provisions, such as chapter 57.105, which allows for an attorneys' fee award in any civil action that is found to have been brought frivolously or in bad faith .... The intent of the Florida legislature in adopting this less stringent standard was "to discourage frivolous RICO claims or claims brought for the purpose of intimidation because the stigma and burden of defending such claims is so great." Accordingly, the Florida courts consistently have held that "defendants are entitled to fees under section 772.104 where civil RICO counts were dismissed with prejudice or a verdict was directed in the defendant's favor" ....

162 F.3d at 1330–31 (internal citations omitted).

The court, in dismissing the plaintiffs' RICO claims with prejudice, summarized that the plaintiffs' "loose and conclusory allegations of all Defendants being involved in a scheme to 'dupe' subcontractors is

insufficient" (Doc. 106, p. 51).  It explained that the plaintiffs did not allege sufficiently any element of a RICO claim: thus, it found that the plaintiffs "failed to allege the existence of an enterprise"; they "failed to adequately allege two or more predicate acts"; and concomitantly, "failed to show a pattern of racketeering activity" (id., pp. 46, 57).

As to the predicate acts, the court held that "[n]one of the[] allegations … are sufficient to allege wire fraud on the part of Defendants" (id., p. 51).  It specified that, as to Worrell, the amended complaint "contains only a single statement allegedly made by him in furtherance of the scheme" and that "[t]his lone allegation falls far short of alleging that Worrell 'knowingly devised or participated in a scheme to defraud plaintiffs' and 'did so willingly with an intent to defraud' as needed to show mail or wire fraud" (id., p. 52).  Furthermore, it stated, "[a]s to Brech there are no allegations in the Amended Complaint whatsoever regarding any statements or actions taken by Brech alone" (id., p. 53).

Moreover, the court held that the "bald accusations that Defendants diverted the payment from SOCOM for their own benefit do not meet the particularity requirements of Rule 9(b)" or even Rule 8, as the plaintiffs "fail[ed] to allege how Defendants knew about the illicit transmission of these funds, when the funds were transferred or in what

20

form" (id., p. 56).[2]

Finally, the court summarized that the RICO conspiracy claim was patently deficient because "[t]he Amended Complaint fails to allege even a single conversation or communication among the Defendants showing an illicit agreement to violate the law" (id., p. 57). Thus, the court essentially found that the facts pled do not permit the court to infer more than a mere suspicion that these defendants engaged in the alleged wrongful conduct, which is wholly inadequate even under Rule 8's pleading standards discussed in Ashcroft v. Iqbal, 556 U.S. 662, 678-81 (2009).

Moreover, as with the civil theft claims, the court specified to plaintiffs' counsel the deficiencies in the RICO claims during the hearing. Nonetheless, the plaintiffs filed an amended complaint that was "nearly identical" to the original deficient complaint (Doc. 106, p. 60). The fact that the amended complaint continued to offer little more than conclusory allegations with insufficient factual support shows that there was no substantial fact or legal support for the Florida RICO claims.

---

[2]The plaintiffs alleged as a third predicate act theft of money from the government (Doc. 106, p. 48). However, that statute does not qualify as a predicate RICO offense (id.).

The plaintiffs argue in their opposition memorandum that "an action is 'substantially justified for the purpose of attorney's fees where it advances in good faith a novel but credible extension or interpretation of the law'" (see Doc. 113, p. 4). This is the standard under which Rule 11 sanctions are evaluated; as with the civil theft statute, an award of attorney's fees under §772.104 is less rigorous than Rule 11. See Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., supra, 162 F.3d at 1330–31. Therefore, this argument is meritless.

The plaintiffs also argue (Doc. 113, p. 4):

> [T]he Court did not find that Plaintiffs' claims lacked factual or legal support, but merely dismissed Plaintiffs' claims for failure to meet pleading requirements .... Not all [Rule] 12(b)(6) dismissals are findings of frivolity giving rise to a right of recovery of attorney's fees.

This argument fails. An award of attorney's fees under the Florida civil RICO statute is not governed by a frivolous standard. See Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., supra, 162 F.3d at 1330 (quoting Hartford Ins. Co. of the Midwest v. Miller, 681 So.3d 301, 302 (Fla. App. 1996)) ("[I]t is not necessary that the court find a complete absence of a justiciable issue of either law [or] fact. The trial court must only find that the claim lacked substantial fact or legal support."). To the contrary, the Eleventh Circuit pointed out that "the Florida courts

22

consistently have held that defendants are entitled to fees under section 772.104 where civil RICO counts were dismissed with prejudice." 162 F.3d at 1331.

Furthermore, it is clear from the strongly worded Dismissal Order that the court found the plaintiffs' RICO claims lacked substantial support, and that it was not simply a pleading deficiency.   Thus, the court stated plainly in the Dismissal Order that it "does not believe that a second opportunity to amend would yield a complaint that could pass muster under the Rules" (Doc. 106, p. 60).

In sum, each defendant is entitled to an award of his reasonable attorney's fees in defense of the Florida RICO claim asserted against him. See Fla. Stat. § 772.104(3).  Of course, fees awarded under this statute are limited to work performed defending the Florida RICO claims, and the fee petition must be tailored accordingly.

## VI.

Finally, Worrell moves to assess his attorney's fee personally against plaintiffs' counsel pursuant to 28 U.S.C. 1927.[3] The statute provides:

> Any attorney ... who so multiplies the proceedings
> in any case unreasonably and vexatiously may be
> required by the court to satisfy personally the

---

[3]The amended complaint was filed on the plaintiffs' behalf by attorney Dallas S. LePierre of the NDH LLC law firm (Doc. 70, p. 33).

> excess costs, expenses, and attorneys' fees
> reasonably incurred because of such conduct.

Thus, this section "is not a 'catch all' provision for sanctioning objectionable conduct by counsel." Schwartz v. Million Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003). The Eleventh Circuit explained this standard in Norelus v. Denny's, Inc., 628 F.3d 1270, 1282 (11th Cir. 2010) (internal citations omitted):

> An attorney multiplies court proceedings "unreasonably and vexatiously" … "only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" The standard is an objective one turning "not on the attorney's subjective intent, but on the attorney's objective conduct." … "[O]bjectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently." We compare the conduct at issue with how a reasonable attorney would have acted under the circumstances.

Additionally, "an examination of the attorney's state of mind" may aid the determination of whether an attorney's conduct was objectively reckless or tantamount to bad faith. Id. (citation omitted).

Worrell argues that attorney's fees should be personally assessed against plaintiffs' counsel because it was objectively unreasonable for him to file the amended complaint (Doc. 109, p. 10). He emphasizes that "Plaintiffs and their Counsel were admonished at the hearing on the initial

24

Motions to Dismiss that their claims came nowhere near the applicable pleading standard," yet plaintiffs' counsel filed an amended complaint containing "allegations that were nearly identical to the ones the Court found lacking in Plaintiffs' original Complaint" (id.). Worrell's argument is meritorious because a reasonable attorney would not have filed the deficient amended complaint, and that filing unreasonably and vexatiously multiplied the proceedings in this case.

As the court emphasized in the Dismissal Order (Doc. 106, pp. 59–60):

> [A]t the July 12, 2019, hearing on the original motions to dismiss, the Court explicitly explained what it found lacking in Plaintiffs' original Complaint and even gave Plaintiffs specific dates it must include in the Amended Complaint to survive a motion to dismiss. Despite promising the Court that it would amend the complaint 'with those exact dates' and would fix the overall deficiencies the Court pointed out, Plaintiffs filed an Amended Complaint that is nearly identical to the original Complaint.

At oral argument on these attorney's fees motions, plaintiffs' counsel stated that the requisite information was absent from the amended complaint because he was "unable to find" the relevant bank records, and his request for the SOCOM contract under the Freedom of Information Act was held for several months and not approved until after this case was dismissed.

25

Plaintiffs' counsel also vaguely mentioned difficulty collecting discovery from the parties.[4]

These circumstances do not excuse the unreasonable decision by plaintiffs' counsel to file a patently deficient pleading. See United States v. Shaygan, 652 F.3d 1297, 1312 (11th Cir. 2011) (Vexatious means "without reasonable or probable cause or excuse."). A reasonable attorney in this circumstance would have either (1) filed a motion for an extension of time to file an amended pleading or (2) declined to file a deficient amended complaint. See Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1240 (11th Cir. 2007) ("Determining whether conduct is reckless necessarily involves comparing the conduct objectively against the conduct of a reasonable attorney."). Instead, plaintiffs' counsel filed an amended complaint that was "nearly identical" to the original deficient one.

In sum, plaintiffs' counsel recklessly and unreasonably pursued this action after the court told him that the facts within his knowledge could not sustain these claims under well-established law. These circumstances warrant the imposition of sanctions against counsel under §1927. See, e.g.,

---

[4] Plaintiffs' counsel was aware of these problems during the hearing on the motion to dismiss the original complaint. He represented to the court that, although a certain amount of facts would be "out of the plaintiffs' reach," he would replead with those exact dates and fix the deficient allegations (see Doc. 79, pp. 43–44).

Coleman v. Oasis Outsourcing, Inc., 779 Fed. Appx. 649, 653 (11th Cir. 2019) (The Eleventh Circuit affirmed fees under §1927 because "counsel was warned about the defects in his WARN Act claim and did not withdraw it. [The defendant] was then forced to file a motion to dismiss citing the same defects ...."); In re Brown, 126 B.R. 615, 617 (Bankr. M.D. Fla. 1991) (Counsel sanctioned under §1927 for filing an amended complaint in which he did not attempt to cure the defects which had been found to exist in the original complaint.).

Furthermore, plaintiffs' counsel's subjective intent supports a finding that his conduct was tantamount to bad faith. See Amlong & Amlong, P.A. v. Denny's, Inc., supra, 500 F.3d at 1276 n.1 ("[A] determination of whether an attorney's conduct was objectively reckless, or tantamount to bad faith, may [also] be aided by an examination of the attorney's state of mind."). As indicated, plaintiffs' counsel made a tactical decision to file an amended complaint that he knew did not comply with the court's specific directives. Furthermore, plaintiffs' counsel discounted the court's rulings that the plaintiffs may not impute statements by Benjamin Worrell to Christopher Worrell. Thus, plaintiffs' counsel brazenly stated in his dismissal opposition memorandum that,

> [w]hile discovery may uncover that certain individuals had *nothing* to do with the [allegedly

27

> fraudulent] emails and letters, .... [f]rom
> Plaintiffs' perspective, the identified Defendants
> wrote, approved, sent or condoned those emails
> and they did so together.

(Doc. 95, p. 14) (emphasis in original). In sum, from both an objective and subjective perspective, plaintiffs' counsel unreasonably and vexatiously multiplied proceedings in this case. See 28 U.S.C. 1927.[5]

Plaintiffs' counsel has no meaningful response to Worrell's argument for §1927 sanctions. He asserts, in a vague and conclusory manner, that "the request is inappropriate and unsupported" (Doc. 113, p. 5). However, he does not explain this contention. As discussed supra, there is ample cause for finding that plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings in this case.

---

[5]Worrell asserted several other arguments in support of sanctions under §1927. None is persuasive and, in any event, each is arguably moot. They are addressed briefly. Worrell implored the court to award fees against plaintiffs' counsel because Worrell's ability to collect from the plaintiffs, which are "two Czech business entities with limited or no assets in the United States" is "highly doubtful" (Doc. 109, p. 9). Worrell presents no legal authority that counsel is liable for fees that cannot be collected from a client.

Worrell also argues that sanctions under §1927 are warranted because the plaintiffs' lawsuit was "a transparent attempt to try and hold blameless individuals liable for a bad business deal that the Plaintiffs made with Purple Shovel, which is in bankruptcy" (id., p. 8). Worrell's speculation is not a proper basis for sanctions.

Finally, Worrell argues that an award of fees is warranted under §1927 because the "Amended Complaint [purportedly] raised numerous facts about Worrell that were patently false and could have been corrected after a very modest amount of due diligence by Plaintiffs' counsel" (id., pp. 8–9). However, the accuracy of those facts was not the basis for this Rule 12(b)(6) dismissal.

Plaintiffs' counsel also argues, vaguely, that the defendants "have not shown that the proceedings were multiplied given the early stage of the litigation" (Doc. 113, p. 7). The point of counsel's argument is unclear, as a proceeding is subject to multiplication at any point after the filing of the initial pleading. See Macort v. Prem, Inc., 208 Fed. Appx. 781, 786 (11th Cir. 2006). Thus, the court's dismissal of the action at the motion to dismiss stage is relevant only to the amount of sanctions.

In sum, plaintiffs' counsel's filing of the deficient amended complaint was unreasonable and reckless, and caused Worrell to incur additional attorney's fees to seek its dismissal. Therefore, sanctions against plaintiffs' counsel pursuant to §1927 are warranted. See Norelus v. Denny's, Inc., supra, 628 F.3d at 1282. In this regard, I recommend that sanctions be imposed in an amount to compensate Worrell's reasonable attorney's fees incurred in this case after dismissal of the initial complaint. That is the point at which plaintiffs' counsel vexatiously and unreasonably multiplied the proceedings.

Worrell contends that, under §1927, he is entitled to an award of attorney's fees since the inception of the case because the initial filing of this lawsuit was unreasonable and vexatious (Doc. 109, p. 8). However, as the plaintiffs argue (Doc. 113, pp. 6–7), "the language of §1927 makes clear

29

that it only applies to unnecessary filings after the lawsuit has begun."
<u>Macort</u> v. <u>Prem, Inc.</u>, <u>supra</u>, 208 Fed. Appx. at 786.   Thus, "[i]t is only
possible to multiply or prolong proceedings after the complaint is filed."
<u>Wenzel</u> v. <u>Templeton & Co., P.A.</u>, No. 07-80578-CIV, 2007 WL 4414822
at *1 (S.D. Fla. 2007) (citation omitted).   Worrell presents no legal authority
countering this holding.

Rather, Worrell argues that this lawsuit should be viewed as a
continuation of the bankruptcy case because "it is, fundamentally, a
vexatious multiplication of the pre-existing bankruptcy proceedings against
Worrell's employer, Purple Shovel" regarding the same defaulted contract
(Doc. 118, pp. 5–6).   This argument is meritless.   As plaintiffs' counsel
points out, the bankruptcy case is a distinct action involving different claims
against different defendants.   They are not part of the same proceeding, and
"[t]he language of §1927 limits the court's sanction power to attorney's
actions which multiply the proceedings in the case before the court."   <u>Matter
of Case</u>, 937 F.2d 1014, 1023 (5th Cir. 1991).

Worrell argues further that §1927 sanctions should reach back
to the initial filing of the lawsuit because plaintiffs' counsel improperly
sought to obtain "virtually all essential discovery in this matter through the
bankruptcy court" (Doc. 109, p. 11).   However, alleged improprieties before

the bankruptcy court are appropriately addressed by the bankruptcy court. See, e.g., Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1995) (denying the defendants' request for sanctions based on allegations that the plaintiff made misrepresentations to the bankruptcy court, stating that it does not "consider the merits of this claim because the district court did not have power to sanction conduct that occurred in a different court in a different case"); Del Nero v. Midland Credit Management, No. CV04-1040ABC, 2010 WL 1227453 at *2 (C.D. Cal. 2010) ("misconduct in other actions ... could not support this Court's imposition of sanctions under Section 1927"). Notably, Worrell stated that this alleged misconduct is the subject of sanctions proceedings in the bankruptcy court (Doc. 109, p. 11).

In sum, sanctions under section 1927 are warranted for plaintiffs' counsel's unreasonable and vexatious multiplication of proceedings in this case after dismissal of the initial complaint.

### V.

For the foregoing reasons, I recommend that the Motions for Attorneys' Fees and Costs (Docs. 107, 109) be granted to the extent that Brech and Worrell be awarded their reasonable attorneys' fees and costs incurred in defending against the Florida civil theft and RICO claims, and that Worrell's attorney's fees be assessed against plaintiffs' counsel for the

period following dismissal of the original complaint.

Respectfully submitted,

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: MAY _14_, 2020.

NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.   28 U.S.C. 636(b)(1)(C).   Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.

32